## PATRICK v. GRAHAM.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF COLORADO.

No. 152. Argued December 10, 1889. — Decided January 6, 1890.

Where a case has gone to a hearing, testimony been submitted to the jury
under objection but without stating any reason for the objection, and a
verdict rendered, with judgment on the verdict, the losing party cannot,
in the appellate court, state for the first time.a reason for that objection
which would make it good.

In an action to recover damages for the taking of ore from a mine by the
proprietor of an adjoining mine, who had broken in, a witness for de-
fendant was asked whether he had a model of the mine, but was not asked
whether it was correct, and did not say that it would illustrate the subject
about which he was testifying. Plaintiff objected to its production and
the objection was sustained. In this court no copy of the model was
produced; *Held*, that it was properly rejected.

The evidence of a person who did not personally know about the amount of
ore taken from the mine was properly rejected at the trial of such action,
and cannot be held to be admissible under a stipulation which does not
form part of the record.

An exception to the refusal to give instructions in the language of counsel
is of no avail if the court substantially gives the same instructions,
although in different language.

THE case is stated in the opinion.

*Mr. C. S. Thomas,* (with whom was *Mr. T. M. Patterson*
on the brief,) for plaintiffs in error.

*Mr. A. W. Rucker* for defendants in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United
States for the District of Colorado.

In that court, Graham and Guggenheim sought to recover
of Patrick and others the value of certain mineral ores taken
from the Minnie lode mining claim of the plaintiffs and con-
verted to their own use, alleging that the defendants were

guilty of a trespass, and that the quantity taken amounted to five hundred tons of gold, silver and lead-bearing ore of the value of $60,035. To this the defendants answered, admitting that plaintiffs were owners in fee of the Minnie lode mining claim, but denying that they were sole owners of said claim, and insisting that Samuel Harsh was a co-owner and co-tenant with them. They deny the trespass and conversion of the five hundred tons or any quantity of the ore, and deny that the ore was of the value of $60,035 or any other sum.

A replication was filed by plaintiffs denying the co-owner-ship of Harsh, and the cause came on for hearing and was submitted to a jury, who found in favor of the plaintiffs, and assessed their damages at the sum of $20,779. A motion was made to set aside this verdict and grant a new trial, which was overruled, and a judgment entered for the amount of the verdict in favor of plaintiffs. To this judgment the present writ of error is prosecuted.

It seems to have been conceded at the trial that the defendants, who owned the adjoining mineral claim, called the Colonel Sellers lode, in pursuing that lode, had broken into the vein of the plaintiffs, known as the Minnie lode, which was the prior and superior claim, and that they had taken therefrom a very considerable quantity of valuable ore, which they had mixed with the ore from their own lode and converted to their own use, by selling it with theirs.

The only question in contest before the jury was the rule by which the damages of the plaintiff should be ascertained. As to that subject, the plaintiffs took one or two exceptions to the ruling of the court in regard to the admission of testimony.

The ground of the first assignment of error is, that the court admitted, against the objection of the defendants, certain testimony of Meyer Guggenheim, one of the plaintiffs. In his testimony Guggenheim undertook to detail a conversation which he had had with Patrick and Whiting, two of the defendants, before the bringing of the suit and with regard to the trespass. The question was asked him: "What was said between you upon the subject, commencing with the first conversation you had, if you had more than one? State what the conver-

sation was." To this question, "the defendants, by counsel, then and there objected on the grounds — " But the court overruled the objection, and permitted the witness to answer. In his answer, he stated that Patrick admitted that they had mixed the ores from the Minnie mine and from the Colonel Sellers mine, and he said that he had written to the parties in control of the mine that they should get off the ground.

The objection taken here to this testimony is, that it was part of a conversation had with a view to a compromise of the controversy and that it could not be used as evidence against the party for that reason. The testimony itself, being evidence of the conversion of the ore by the defendants, with a knowledge that it was the property of plaintiffs, was pertinent as to the measure of damages. It was, therefore, only to be excluded, if at all, on some ground other than its want of relevancy to the issue.

The record before us does not show that the defendants at the time of the trial and at the time that the objection was made to the introduction of this evidence gave any reason at all why it should be rejected, much less the reason which they now insist on.

It cannot be permitted that, after the case has gone to a hearing, testimony submitted to the jury and a verdict rendered, a party, for the first time, shall state a reason for his objection to that evidence which would make the objection good. The record is precisely as we have copied it, showing that while defendants "then and there objected on the grounds — " the record is then silent. No grounds were stated so far as we know. For this reason we think there is no error in the record on that subject.

If we were inclined to have any doubt upon this point, it would be satisfied by the language of the court in its charge to the jury, where it is said that "it is in proof that in going over into the plaintiffs' territory the defendants' foreman was in ignorance of the fact that he was upon plaintiffs' ground, and the question is, whether under the circumstances in evidence this amounts to gross negligence on the part of the defendants." This charge of the court accords with the state-

ment in the bill of exceptions, that in reply to further objection to the testimony relating to the effort to agree, the court said that the "part which is not competent under the rule will be stricken out." It is obvious that the jury were in effect told to disregard any testimony showing that the trespass on the part of defendants was intentional and with knowledge of the rights of plaintiffs.

The next assignment of error is that a witness called by the defendants to testify as to the value and quantity of the ore taken out of plaintiffs' mine (after stating that he had made measurements of the stope from which the plaintiffs' ore had been taken, by which measurement he calculated the amount of ore that had been so taken) had introduced a plat of the mine and of these measurements. He was then asked the question:

"What proportion of the vein comprised in the Minnie and A. Y. mines does this stope bear, according to your measurement? Have you a model that would show that?

"A. I have a model here.

"Q. Produce it."

To the production and exhibition of this model the plaintiffs objected. The objection was sustained by the court, and to this an exception was taken by the defendants. This exception is now urged as sufficient to reverse the judgment. But we have no copy of the model here. We have no description of it. The witness did not swear to its correctness. He did not even say that it would illustrate the subject about which he was testifying. He simply said "I have a model here." It is impossible for this court to assume that the judge at the trial was incorrect in refusing to permit such a model to go in evidence.

The defendant, J. C. Whiting, was introduced as a witness, and in the course of his testimony he was asked: "What companies or smelters were purchasing ores from the Colonel Sellers mine during the months of March, April, May and June, 1883?" To which he answered as follows:

"A. We had in these months a contract running with the Harrison Smelter, with the Arkansas Valley, with the Colo-

rado Smelting and Refining Company, the Pueblo, with the Kansas City, and with the Argentine Smelting and Refining Company. I can't remember all.

" Q. In making settlements during this time did you receive duplicate statements from them of the amounts of ore sold ?

" A. Ordinarily we didn't get duplicate statements; we got the original statements.

" Q. You received a statement ?

" A. Yes, sir.

" Q. Can you state what the gross receipts of ore sold from the Colonel Sellers mine for the month of April, 1885, were ?

" A. I can.

" Q. Now state what they were.

" Plaintiffs object to the question on the ground that ore shipments from the Colonel Sellers mine certainly can throw no light upon this case; also the point argued at length that a mixture of high-grade ore from the stope in question with the low-grade ores from the grounds of the Colonel Sellers mine would so reduce the value per ton of ore from plaintiffs' property as to make the statement on that basis manifestly unjust to the plaintiffs.

" The objection was sustained."

The counsel for defendant then said : " I have a stipulation from the other side that the evidence, if received at all, may be introduced in the shape of ore statements verified by the officers of the smelters furnishing them, so as to dispense with the necessity of producing so many witnesses." But this stipulation is nowhere produced in the record. Nor is there any verification of these ore receipts, nor any proof whatever of their truth. The court, we think, very properly rejected the testimony of Mr. Whiting on that subject, for it does not appear that he himself personally knew anything about the quantity of ore taken out during the period alluded to.

These seem to be all the errors assigned on which counsel for plaintiffs in error rely. An exception was taken to the refusal of the court to grant certain prayers for instructions offered by defendants, but these were substantially given, although in different language, in the charge of the court to

the jury. This charge presented in a clear and, as we believe, correct light a sound view of the question of damages as it relates to this case. To it no exception was taken, nor to any part of it. On the whole, we do not find any error in the record, and the judgment of the Circuit Court is accordingly

*Affirmed.*