## DAVIS v. UNITED STATES.

**(Circuit Court of Appeals, Sixth Circuit. April 13, 1901.)**

### No. 891.

1. CIRCUIT COURT OF APPEALS—JURISDICTION—CONVICTION OF CONSPIRACY.

Section 5, Cir. Ct. App. Act March 3, 1891 (31 C. C. A. viii., 90 Fed. viii.), amended by Act Feb. 18, 1895 (31 C. C. A. xlii., 90 Fed. xlii.), makes the criminal jurisdiction of the supreme court dependent on whether the crime of which a party has been convicted is capital; and hence where an indictment for conspiracy involves also a charge of murder in aggravation thereof, but conviction is for conspiracy only, the circuit court of appeals has jurisdiction, the latter offense not being capital.

2. CIVIL RIGHTS—CONSPIRACY TO PREVENT EXERCISE—FELONY IN CONNECTION THEREWITH—DISTINCT OFFENSES.

Rev. St. U. S. §§ 5508, 5509, defining the offense of conspiracy to injure or intimidate citizens in the exercise of civil rights, and subjecting an offender, who has been guilty of a felony in connection therewith, to the punishment prescribed therefor by the state law, does not contemplate two distinct offenses against the United States; the conspiracy only being of federal cognizance, and made punishable, and the other crime being merely an aggravation thereof, so that if the conspiracy is not proved there can be no conviction for the felony.

3. SAME—EVIDENCE—SUFFICIENCY.

If, in a prosecution for conspiracy under such statute, the evidence shows a detail of facts and circumstances in which the alleged conspirators are involved, separately or collectively, and which are clearly referable to a preconcert of the actors, and there is a moral probability that they would not have occurred as they did without such preconcert, it is sufficient if it satisfies the jury beyond a reasonable doubt.

4. SAME—VIOLATION OF REVENUE LAWS—CONSPIRACY TO PREVENT ARREST—EVIDENCE—MOTIVE.

In a prosecution for conspiracy under such statute, the alleged purpose of which was to prevent the arrest of defendant and others for violating the revenue laws, and including the crime of murder in aggravation thereof, a neighbor of defendant was allowed to testify that at the time when the officers attempted defendant's arrest, and a deputy marshal was killed, that defendant had a still, which at one time was east of his house, and then on the west side thereof. Another witness testified that he frequently visited defendant's house before the deputy was killed, and bought whisky of him; that he let defendant know he wanted it, and would lay his money down in a certain place, and after going back would find a bottle of whisky there and the money gone. Deputy marshals were allowed to testify that on a visit which they made to defendant's place a year or two before the occurrence in question they found whisky in jugs concealed about the premises, and that, on attempting to continue their search down a ravine leading from defendant's house, the latter and another appeared with guns, and compelled them to turn back. *Held*, that this evidence was properly admitted to prove the object and purpose of the conspiracy, and explain defendant's motive in entering into it, and in resisting the officers by firing on them and killing one of their number.

5. CRIMINAL LAW—OBJECTION TO EVIDENCE—SUFFICIENCY.

An objection to the admission of evidence that it is incompetent is not available on writ of error, as it is not specific, and does not distinctly indicate the grounds of the objection.

6. SAME—ISSUE OF GOOD CHARACTER—CROSS-EXAMINATION OF DEFENDANT'S WITNESSES.

Accused having tendered evidence of his good character relating to a period continuing to the time of the trial, the prosecution was properly permitted to contradict the same on cross-examination of a witness for accused, showing that he had previously been sent to the penitentiary for a different offense.

107 F.—48

7. VIOLATION OF REVENUE LAWS—PROSECUTION—CONSPIRACY TO PREVENT AR-
REST—TRIAL—INSTRUCTIONS.

In a prosecution under Rev. St. U. S. §§ 5508, 5509, for conspiracy, the alleged purpose of which was to prevent the arrest of defendant and others for violating the revenue laws, including a charge of murder in aggravation thereof, the court, having particularly in mind the period within which the conspiracy might have been formed prior to its execution, charged that it would be sufficient to establish it if defendant knew that the United States officials were coming for his lawful apprehension and arrest, and that then and there he and those associated with him, or any one or more of them, and named as his co-conspirators in the indictment, determined to resist the proposed or threatened arrest by force of arms, if necessary. or by flight; or if previously to that, at a time more or less remote, defendant and the alleged conspirators, any one or more of them, knew that the officers were coming wherever he might be, with lawful process to arrest defendant, and determined that they would resist, by his flight and their assistance to that end, or by force of arms, if necessary. *Held*, that the jury must have understood that the conspiracy, to be within the statute, must have included an agreement to resist the arrest of accused by force of arms, if the attempt to effect his escape by flight should fail, and that, thus construed, the instruction was not erroneous.

In Error to the District Court of the United States for the Western District of Tennessee.

The respondent in this case, now plaintiff in error, was convicted at the April term, 1900, of the district court for the Western district of Tennessee, of the offense defined by section 5508 of the Revised Statutes of the United States; that is to say, of having conspired with other persons to injure, oppress, threaten, and intimidate certain citizens of the United States in the free exercise and enjoyment of the right and privilege secured by the constitution and laws of the United States while searching for, and endeavoring to arrest, the plaintiff in error and other parties named in an indictment for violating the internal revenue laws, which had been found by the grand jury at a session of the said district court. The citizens mentioned consisted of the marshal and some deputy marshals of the United States for that district, and a posse whom the marshal had called to his aid in executing a warrant of arrest founded upon the above-mentioned indictment. The indictment charged the accused, not only with the conspiracy, but also with having, in the execution thereof, shot and killed one Garner, a deputy marshal, thereby having committed the crime of murder, which, by section 5509, is made an aggravation of the principal offense, and subjects the offender to the punishment prescribed by the law of the state for such a crime. The jury found the plaintiff in error guilty of the conspiracy, but not guilty of the murder, and he was sentenced to 10 years of imprisonment, and to pay a fine of $5,000. Thereupon he brought the case here upon a writ of error, assigning errors in certain rulings of the court upon the trial, and in overruling a motion for a new trial and in arrest of judgment. See 103 Fed. 457.

W. A. McDougall, for plaintiff in error.

George Randolph, U. S. Dist. Atty.

Before LURTON and SEVERENS, Circuit Judges, and CLARK, District Judge.

SEVERENS, Circuit Judge, having made the preceding statement of the case, delivered the opinion of the court.

A question was suggested by the district attorney at the hearing, though the point was not pressed, whether this court has appellate jurisdiction in the case. Reference was made to certain cases where the statute founds the jurisdiction to review upon writ of error the

proceedings of the trial court upon the character of the offense charged in the indictment. But here the test of jurisdiction is the character of the offense of which the party has been convicted. The distinction is quite clear. In the present case the party has been convicted of conspiracy only, which is not a capital offense, and therefore is within the appellate jurisdiction of this court, and not that of the supreme court. Section 5, Cir. Ct. App. Act March 3, 1891 (31 C. C. A. viii., 90 Fed. viii.); amended by Act Feb. 18, 1895 (31 C. C. A. xlii., 90 Fed. xlii.).

Counsel for the plaintiff in error, who submits the case on a brief, alleges six grounds on which he contends for a reversal of the judgment, the first two of which may be considered together. They are:

"First. In the first place, we insist that the indictment does not charge the crime of conspiracy as such, but alleges the existence of the conspiracy for the sole purpose of giving the court jurisdiction of the crime of murder. Second. The crime of murder and the crime of conspiracy are two separate and distinct offenses, and the crime of murder does not include or embrace the crime of conspiracy, and the defendant cannot be tried for two separate and distinct offenses at the same time."

These contentions are based upon a misconception of the effect of sections 5508 and 5509. They do not contemplate two distinct offenses against the United States. Only the conspiracy is of federal cognizance, and it is that offense which is made punishable. If, in the prosecution of it, a thing is done which is a crime by the laws of the state, the conspiracy is punishable by a measure of punishment equal to that prescribed by the law of the state for such other crime. But it is an aggravation merely of the substantive offense of conspiracy. If the latter is not proven, there can be no conviction for the offense which constitutes the aggravating circumstance, and the proceeding falls to the ground. It is plainly indicated in Motes v. U. S., 178 U. S. 458, 20 Sup. Ct. 993, 44 L. Ed. 1150, that this is the view taken of these sections by the supreme court. It cannot be doubted that it was within the power of congress to deal with such a conspiracy and impose such punishment therefor as it should deem proper; and, having such authority, it was competent to take notice of such incidents of violence and wrong as were likely to happen in the prosecution of such combinations, and to measure the punishment by that which is prescribed by the local law for such acts when made, of themselves, the subject of punishment. Though measured by those laws, the penalty is imposed by the law of the United States.

It is next contended that there is no adequate evidence of the conspiracy charged in the indictment upon which the verdict of the jury can be sustained. This might be so if it were necessary to prove the combination by distinct and formal agreement. But, as we held in the case of Reilley v. U. S. (recently decided) 106 Fed. 896, this is not necessary. If the evidence shows a detail of facts and circumstances in which the alleged conspirators are involved, separately or collectively, and which are clearly referable to a preconcert of the actors, and there is a moral probability that they would not have occurred as they did without such preconcert, that is sufficient if it satisfies the jury of the conspiracy beyond a reasonable doubt. We

have considered the evidence, and think it ample to convince the jury that there was a common understanding between the plaintiff in error and others in his neighborhood, some of whom are mentioned in the indictment, to warn each other of the approach of federal officers, coming to enforce the revenue laws, and to resist them by violent means, if necessary to prevent the service or execution of process. The evidence tends strongly to show that the plaintiff in error himself fired the fatal shot by which the deputy marshal lost his life, and it is not easy to see how any other conclusion could be reached than that this killing was one of the contemplated results of the combination. But the jury did not find the murder charged to have been committed by the plaintiff in error. It may have been one of those compromises which sometimes take place in the jury room. It is enough that they were justified in finding, at least, the conspiracy.

The fourth point made is that the district attorney was permitted, over the objection of the defendant, to introduce proof of other offenses, entirely separate and distinct from that for which he was on trial. The first specification under this head is upon the overruling of an objection to a question of the district attorney put to a witness, McDuffy, who was living near by the plaintiff in error at the time when the officers attempted his arrest and Garner was killed. The question was, "Did you know anything about George Davis having a still there?" to which the objection was made that it related to another violation of law, entirely distinct and separate from that for which the respondent was being tried. The objection being overruled, the witness testified that Davis did have a still there; that it was at one time east of his house, "and then he had it on the west side." We think it was competent to show the fact called for by the question. It was admissible to prove the object and purpose of the alleged conspiracy, and explain the motive of the respondent in entering into it, and in resisting the officers by firing upon them and killing one of their number. The objection was properly overruled.

The second specification relates to the admission of testimony by another witness, who testified that he frequently visited Davis' house before Garner was killed, and bought whisky of him; that he let Davis know he wanted it, and would lay his money down in a certain place, and afterwards, going back, would find a bottle of whisky there and the money gone. For the reason above stated, this evidence was also admissible. It was relevant to the question of the motive for the conspiracy alleged. Then, further, we are referred to five or six pages of testimony given by a deputy marshal relating to a visit he made at Davis' place a year or two before the occurrence in question. He stated that he found whisky in jugs concealed about the premises, and that, on attempting to continue his search down a ravine in an easterly direction from the house, Davis and another party appeared on the ridge along the side of the hollow, with guns in their hands, and forbade them from going in that direction any further, and compelled them to turn back. The objection was that it was not a part of the transaction in question,

and therefore incompetent. The court did not err in receiving the testimony. Like that already considered, it was competent for the same purpose. Another deputy marshal was a witness who accompanied the deputy last mentioned upon the occasion testified about by the latter. His testimony was of a similar character, and received over a like objection. It was properly received, for the reason already stated.

The fifth allegation of error made in the brief of counsel is "that the district attorney was permitted, over the objection of defendant, to prove that the defendant had been sent to the penitentiary on a former occasion and for a different offense"; referring to the testimony given on cross-examination of one of defendant's witnesses, in reference to an occurrence at a session of the district court in 1895. The district attorney put this question, "Was not that the same time George Davis was sent up?" to which the witness answered, "It was." Thereupon, the record states, defendant's counsel excepted to this question and answer for incompetency, but the exception was overruled. Without determining whether the objection should have been taken before the answer was given in order to be available, and treating the exception as equivalent to an objection and exception seasonably made, the fact remains that no sufficient ground therefor was assigned. The suggestion that the testimony was incompetent amounts to nothing. It is no more effective for the purpose of directing the attention of the court to any ground on which the objection might be supposed to rest than a mere objection without specifying any reason. That an objection to evidence without the assignment of any ground or reason therefor is not sufficient to save a question upon its being overruled has been repeatedly adjudged in this and other courts. Patrick v. Graham, 132 U. S. 627, 10 Sup. Ct. 194, 33 L. Ed. 460; District of Columbia v. Woodbury, 136 U. S. 450, 10 Sup. Ct. 990, 34 L. Ed. 472; Mitchell v. Marker, 10 C. C. A. 306, 62 Fed. 139, 25 L. R. A. 33; Railroad Co. v. Hellenthal, 31 C. C. A. 414, 88 Fed. 116; Reilley v. U. S. (recently decided by this court), 106 Fed. 896; Railway Co. v. Charless, 2 C. C. A. 380, 51 Fed. 562; U. S. v. Shapleigh, 4 C. C. A. 237, 54 Fed. 126; Railway Co. v. Henson, 7 C. C. A. 349, 58 Fed. 531; Minchen v. Hart, 18 C. C. A. 570, 72 Fed. 294. In Mitchell v. Marker, supra, where the objection was general, Judge Lurton, delivering the judgment of this court, said: "The assignment is bad. The ground of the objection was not stated to the court below. The exception was a general one." "The cases are numerous which hold that, to avail on writ of error, an objection to evidence must be specific, and distinctly indicate the grounds upon which the objection is made." Sometimes a limitation of this rule has been suggested which would exclude its application where the evidence offered was not admissible for any purpose. The difficulty would still be that it would devolve upon the judge the necessity for determining, upon the spur of the moment, whether the objection is made for that reason, or upon some other, and what, reason present to the mind of counsel, but not stated. Said Mr. Justice Miller, in delivering the opinion of the

court in Patrick v. Graham, supra: "It cannot be permitted that after a case has gone to a hearing, testimony submitted to the jury, and a verdict rendered, a party for the first time shall state a reason for his objection to that evidence which would make that objection good." So here, the first time when any reason is stated, or hinted at, is in the brief of counsel upon the present hearing. But, if we assume the rule to be as modified by the exception, it remains that the evidence was of a fact bearing upon the question of the character of the defendant which was put in issue by his tendering evidence that it was good, and that evidence related to a period continuing to the time of the trial.

It is further contended that the charge of the court was prejudicial to the defendant, and had a tendency to impress upon the minds of the jury the idea that it was their duty to convict. No specific error in matter of law is pointed out in this connection, but it is contended, in substance, that the language of the judge betrayed a strong leaning against the defendant. But we do not think there is any ground for complaint in this regard. The instructions state the law clearly, and the judge told the jury that they were to determine the facts by their own judgment. The province of the judge was certainly not transgressed.

Another question is presented by an exception taken to the charge of the court to the jury in reference to the subject of the conspiracy. The presiding judge in that part of his instructions, having more particularly in mind the period of time within which the conspiracy might have been formed prior to the execution of its purpose, charged the jury that it would be sufficient to establish the charge of conspiracy in the indictment if the defendant knew that the United States officials were coming for the lawful purpose of his apprehension and arrest, and that then and there he and those associated with him, or any one or more of them, and named as his co-conspirators in the indictment, determined to resist the proposed or threatened arrest by force of arms, if necessary, or by flight; or if previously to that, at a time more or less remote, the defendant and the alleged conspirators, any one or more of them, knew that the officers were coming wherever he might be, with lawful process to arrest the defendant, and determined that they would resist that arrest, by his flight and their assistance to that end, or by force of arms, if necessary. The objection made to this instruction is not that it was erroneous in respect to the time when the conspiracy might have been formed, but that it was error to charge that a conspiracy to resist the arrest by effecting the defendant's flight would be sufficient to make out the case in that aspect of it. If the instruction were such as the counsel assumes it to have been, it would present a serious and very important question. But we think the objection rests upon a misconstruction of the charge. The court did not tell the jury that a conspiracy to effect an escape by flight, and to do that only, would bring the case within the statute. The instruction was that if the conspiracy was to effect his escape by flight, if they could, and, further, if that could not be accomplished, then by force of arms, that would be sufficient. The way in which

the judge puts the alternative in the first paragraph might, perhaps, bear the construction attributed to it. But in the second the language indicates that he meant to include resistance by force of arms, if necessary. And that is not an unnatural construction of the first paragraph also. Taking the whole charge upon this subject into view, we think that the jury must have understood that the conspiracy, in order to be within the statute, must have included an agreement to resist the arrest of the accused by force of arms, if the attempt to effect his escape by flight should fail; and this, we think, was not erroneous. None of the grounds relied upon for reversing the judgment being sustained, it must be affirmed.