## GRANDISON v. ROBERTSON et al.

(Circuit Court of Appeals, Second Circuit. February 15, 1916.)

No. 127.

1. INSOLVENCY ⊜➣61(1)—PREFERENCES—VALIDITY.

At common law, and except as forbidden by statute, an insolvent debtor can prefer one creditor over others by a payment made in good faith and in satisfaction of a real debt.

[Ed. No.—For other cases, see Insolvency, Cent. Dig. §§ 79–85, 88, 90–95; Dec. Dig. ⊜➣61(1).]

2. BANKRUPTCY ⊜➣166(2, 4)—"PREFERENCES"—VALIDITY—STATUTE—"VOIDABLE PREFERENCE."

Under Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562, as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (Comp. St. 1913, § 9644) providing that a person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition, or after the filing of the petition and before the adjudication, made a transfer of property, the enforcement of which will enable any of his creditors to obtain a greater percentage of his debt than any other creditor of the same class, and section 60b, as amended by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (Comp. St. 1913, § 9644), providing that if a bankrupt shall have made a transfer within four months before the filing of the petition, or after the filing and before the adjudication, while insolvent, and the transfer then operates as a "preference," and the person receiving it had reasonable cause to believe that the enforcement thereof would effect a preference, it shall be voidable by the trustee, a preference, to be "voidable," must have been received by one who had reasonable cause to believe that it would effect a preference; but under Bankr. Act, § 67e, as amended in 1903 (Comp. St. 1913, § 9651), providing that all conveyances by a debtor within four months prior to the filing of a petition in bankruptcy against him, and while insolvent, which are void as against creditors under the laws of the state in which the property is situate, shall be void under the Bankruptcy Act and Stock Corporation Law N. Y. § 66, providing that no conveyance by a corporation which has refused to pay any of its notes or obligations when due, with intent to give preference to any particular creditor, shall be valid, it is only necessary that the corporation be insolvent, and that the payment be made, not received, with intent to give a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–253, 256; Dec. Dig. ⊜➣166(2, 4).

For other definitions, see Words and Phrases, First and Second Series, Preference; Voidable.]

3. BANKRUPTCY ⊜➣303(3)—PREFERENCES—EVIDENCE—KNOWLEDGE OF CREDITOR.

In an action by the trustees in bankruptcy to recover payments as preferences, evidence *held* not to show that the creditor receiving the payments knew or had reasonable cause to believe that preferences were intended by such payments.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 462; Dec Dig. ⊜➣303(3).]

4. BANKRUPTCY ⊜➣303(3)—PREFERENCES—EVIDENCE—INSOLVENCY AND INTENT OF DEBTOR.

In an action by trustees in bankruptcy to recover alleged preferences, evidence *held* to show that a corporate debtor was insolvent when it made payments to the creditors within four months prior to the filing of

the petition in bankruptcy, and that it intended thereby to give a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 462; Dec. Dig. ☞303(3).]

5. BANKRUPTCY ☞303(2)—ACTIONS BY TRUSTEE—ADMISSIBILITY OF EVIDENCE —INSOLVENCY.

In an action by trustees in bankruptcy to recover alleged preferences, the admission of testimony given by the president of another creditor in a suit against it, over the objection by defendants that statements of such president could not be binding on it, was not error, where it was received for the purpose of showing insolvency of the creditor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 460, 461; Dec. Dig. ☞303(2).]

6. APPEAL AND ERROR ☞232(2)—PRESENTING QUESTIONS IN LOWER COURT— OBJECTIONS TO EVIDENCE—GROUNDS—WAIVER.

Where the only objection made to such testimony when it was offered was that it could not in any way bind the defendants, the objection that the defendants were thereby deprived of their right of cross-examination was waived.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1430, 1431; Dec. Dig. ☞232(2); Trial, Cent. Dig. §§ 211–213.]

7. APPEAL AND ERROR ☞231(3)—PRESENTING QUESTIONS IN LOWER COURT— OBJECTIONS TO EVIDENCE—GENERAL OBJECTIONS.

General objections to evidence are sufficient, where the ground therefor is manifest; but, where it is not manifest, the objection must state the specific ground on which it is based.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞231(3); Trial, Cent. Dig. §§ 194–200, 223, 226.]

8. BANKRUPTCY ☞182—PREFERENCES—STATE LAWS—"PURCHASER FOR VALUABLE CONSIDERATION WITHOUT NOTICE."

A bank to whom payments were made by an insolvent corporation with intent to give a preference, and which, without knowledge of the corporation's insolvency, applied such payments to a demand note indorsed by an officer of the corporation, and surrendered the note, and thereby lost its right against the indorser by failing to make presentment and give notice of nonpayment within a reasonable time, as required by Negotiable Instruments Law (Consol. Laws N. Y. c. 38) § 131, was a purchaser for value in good faith, against whom the preference was not void, under the Stock Corporation Law (Consol. Laws N. Y. c. 59), and the trustee could not recover the payments under Bankr. Act, § 67e.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 255–258; Dec. Dig. ☞182.

For other definitions, see Words and Phrases, First and Second Series, Purchaser for Valuable Consideration.]

9. BILLS AND NOTES ☞402, 414—LIABILITY OF INDORSER—PRESENTMENT AND NOTICE—OFFICER OF CORPORATION.

The president and treasurer of a corporation, who indorses its note, is entitled to presentment and notice of nonpayment to fix his liability.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1074–1080, 1142, 1148–1155; Dec. Dig. ☞402, 414.]

10. BILLS AND NOTES ☞397—LIABILITY OF INDORSER—PRESENTMENT AND NOTICE—INSOLVENCY OF MAKER.

The insolvency of the maker of a note does not excuse presentment and notice of dishonor, though the indorser knew of the insolvency.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1029–1044; Dec. Dig. ☞397.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**11. BANKRUPTCY ⬅️182—PREFERENCES—BONA FIDE PURCHASER.**
    Where the indorser of a note, paid by preferences given by a corporation which subsequently became bankrupt, was secured by property of the corporation assigned to him before the indorsement was made, his right to presentment and notice and demand before his liability is fixed is doubtful; but inasmuch as he was not clearly liable without them, the possibility of the loss of the right to proceed against him by applying the payments to the note and surrendering it to the corporation is sufficient to make the holder of the note a purchaser for value, against whom, if bona fide, the payments were not void under the New York Stock Corporation Law, and therefore could not be recovered by the trustee in bankruptcy, under Bankr. Act, § 67e.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 255–258; Dec. Dig. ⬅️182.]

Appeal from the District Court of the United States for the Western District of New York.

Suit by Wilbur B. Grandison, as trustee of the estate of the O. L. Gregory Vinegar Company, bankrupt, against Frederick Robertson and another. Decree for complainant (220 Fed. 985), and defendants appeal. Modified and affirmed.

This cause comes here on appeal from a decree entered on March 9, 1915. The facts are stated in the opinion.

Dirnberger & Augspurger, of Buffalo, N. Y. (M. F. Dirnberger, Jr., and George A. Orr, both of Buffalo, N. Y., of counsel), for appellants.

Thomas C. Burke, of Buffalo, N. Y. (Thomas C. Burke, Frank Gibbons, and Henry W. Pottle, all of Buffalo, N. Y., of counsel), for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. This suit was commenced by the trustee in bankruptcy against the defendants to recover certain payments claimed to have been made preferentially by the bankrupt within four months before the filing of the petition in bankruptcy. The District Court has found that certain payments were preferential and has entered a decree directing defendants to pay over to complainants the sum of $8,576.73.

The defendants are members of the firm of Frederick Robertson & Co. They are private bankers at North Tonawanda, N. Y. The O. L. Gregory Vinegar Company is a corporation organized under the laws of the state of New York, and was engaged in the business of manufacturing cider and vinegar in North Tonawanda in this state. It will be hereinafter referred to as the company.

On February 15, 1910, an involuntary petition in bankruptcy was filed against it, and on March 4, 1910, it was duly adjudicated a bankrupt. On March 28, 1910, the complainant was appointed trustee of the estate of the bankrupt. The trustee alleges in his bill that the company was insolvent at all of the times between October 15, 1909, and the time of the filing of the petition in bankruptcy. On October 15, 1909, it was indebted to defendants on two promissory notes of

$5,000 each. One of these notes was made by the company. The other was made by the Albion Fruit Produce Company and was indorsed by the company. On November 1, 1909, the company renewed the note which it had made and gave a new note for $5,000, indorsed by O. L. Gregory and O. L. Alexander. This note was payable on demand, but no demand has ever been made. There was paid, on the note last given, $508.53 on November 20, 1909; $1,000 on December 1, 1909; $1,000 on December 9, 1909; and $2,534.47 on January 18, 1910. In addition, certain other payments were made which are hereinafter. stated.

It may be said that O. L. Alexander, the indorser of the note for $5,000 above mentioned, was at the time of his indorsement the president and treasurer of the company which gave the note, and that he continued as president and treasurer down to the time this suit was brought. He was elected president on October 12, 1909, and at that meeting of the board of directors a resolution was adopted which recited that as defendants herein and the Rochester bank had refused to grant to the company further credit unless its notes were indorsed by an additional indorser, and that as Mr. Alexander was willing to indorse the renewal notes "provided certain security, as hereinafter stated, is given to him:" "Now, therefore, be it resolved, that this company assign to the said O. L. Alexander, as collateral security for the indorsements, as above stated, accounts receivable of this company and the proceeds thereof aggregating an amount not exceeding twenty thousand dollars ($20,000)."

After the adoption of that resolution, and, as we have seen, on November 1, 1909, Mr. Alexander indorsed the note for $5,000. The assignment of accounts was not made at the time the resolution was adopted, nor at the time the note was indorsed. But thereafter, and as the products of the company were sold, the accounts were assigned to him, and as the accounts were realized upon the proceeds were deposited in bank to the credit of the O. L. Alexander Collateral Account, and thereafter were applied by him on the note due to the defendants, and which are now claimed by the trustee as preferential payments.

[1] At common law, and except as forbidden by statute, an insolvent debtor had the right to prefer one creditor over others. If a payment was made in good faith and in satisfaction of a real debt, the fact that it operated to prevent other creditors from collecting their debt was not regarded by the common law as making it a voidable payment. Whatever right the trustee in bankruptcy, therefore, has to recover in this suit any payments made to these defendants by this bankrupt company, he must derive from some provision in the Bankruptcy Act.

[2] The Bankruptcy Act of 1898, as amended in 1903, provides in section 60a as follows:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication * * * made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will

be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." 32 Statutes at Large, 799.

And the act, as amended in 1910, provides in section 60b as follows:

"If a bankrupt * * * shall have made a transfer of any of his property, and if, at the time of the transfer, * * * and being within four months before the filing of the petition in bankruptcy or after the filing * * * and before the adjudication, the bankrupt be insolvent and the * * * transfer then operates as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person." 36 Statutes at Large, 842.

And the act, also as amended in 1903, provides in section 67e as follows:

"That all conveyances, transfers, assignments or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. And all conveyances, transfers, or encumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the state, territory, or district in which such property is situate, shall be deemed null and void under this act against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction." 30 Statutes at Large, 564; 32 Statutes at Large, 800.

But the trustee in his bill claims that payments made to the defendants were also made in violation of the Stock Corporation Law of the state of New York, and that he is, therefore, entitled by virtue of the provisions in Bankruptcy Act, § 67e, to recover any payments which are made preferential and void under the New York act. The Stock Corporation Law (Consolidated Laws N. Y. 1909, vol. 5, p. 5782) provides in section 66, among other things, that:

"No conveyance, assignment or transfer of any property of any such corporation (one that has refused to pay any of its notes or other obligations, when due, in lawful money) by it or any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, except that laborers' wages for services shall be preferred claims and be entitled to payment before any other creditors out of the corporation assets in excess of valid prior liens or incumbrances. * * * Every person receiving by means

of any such prohibited act or deed any property of the corporation shall be bound to account therefor to its creditors or stockholders or other trustees. * * * Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void."

The above act also provides that every director or officer of a corporation, who shall violate or be concerned in violating any provision of the section referred to, shall be personally liable to the creditors and stockholders of the corporation of which he shall be a director or an officer to the full extent of any loss they may respectively sustain by such violation. With this last provision we are not, however, now concerned. The act also prohibits the defaulting corporation from transferring any of its property "to any of its officers, directors or stockholders, directly or indirectly for the payment of any debt, or upon any other consideration than the full value of the property paid in cash."

This Stock Corporation Law appears to be a re-enactment of section 48 of Laws 1890, c. 564, as amended by Laws 1892, c. 688, and by Laws 1901, c. 354, adding the exception that laborers' wages for services shall be preferred claims and a provision prohibiting general assignments by railroad, banking or insurance corporations.

It is to be observed that under the Bankruptcy Act a preferential payment, to be voidable, must have been received by one who had "reasonable cause to believe" that it would effect a preference; while under the New York Stock Corporation Law the invalidity of the payment is not made to depend upon the knowledge of the one receiving the payment that it is a preferential payment, or upon his having reasonable cause to believe that it is a preferential payment. It depends upon whether the corporation or its officers in making the payment did so with the intent of giving a preference to any particular creditor over other creditors. Under the New York statute the invalidity of the payment is conditioned on two facts: (1) The corporation must have been at the time of payment insolvent, or its insolvency must have been imminent. (2) The payment must have been made (not received) with the intent of giving a preference to a particular creditor over other creditors of the corporation.

[3] Did the defendants at the time they received any of the payments made to them have reasonable cause to believe that a preference was intended or would result therefrom? The court below answered this question in the negative. This brings us to inquire whether the trustee can maintain this suit under Bankruptcy Act, § 60b. The suit cannot be maintained under that section of the act unless the defendants knew or had reasonable cause to believe that a preference would result from the payments the trustee now seeks to recover.

The evidence discloses that the indebtedness of the bankrupt to the defendants commenced in November, 1908. At that time a loan of $5,000 was made, and on December 3, 1908, a second note for a like amount was discounted. The total indebtedness at that time was $10,000, and it so continued through the winter, spring and summer of the following year. No collateral was deposited to secure the payment of the notes, but the latter bore the individual indorsement of

some of the officers of the company. When the notes became due they were renewed from time to time. One of the defendants testified that he was told in the spring of 1909 by Mr. Gregory, then president of the company, that either he or a man by the name of Martin, who was one of the officers of the company, would have to get out. He also remembered that he had been told by Martin that Gregory could not live within his salary and overdrew his account, and that he (Martin) would not stand for it. The defendants knew that dissensions existed among the officers of the company, and that after a time Gregory got out and Alexander became president. But they were never informed that there was any intention of winding up the business. They knew that there was a mortgage for $25,000 against the property of the company at the time they made their first loan, and they knew that the mortgage was held by the National Bank of Commerce of Rochester, but they did not know the total amount of the indebtedness to that bank.

Frederick Robertson, the active member of defendants' firm, could not recollect that he had inquired at any time as to the amount the company owed general creditors. He, however, did make some investigation of the standing of the company and of the indorsers at the time of the first loan. That investigation satisfied him as to the financial standing of the parties. He made a personal examination of the company's plant and regarded it as worth at that time between $50,000 and $75,000, and he testified that he never saw a manufacturing plant in finer condition, and that he had had considerable experience in the examination of manufacturing plants, covering a period of 17 years. He testified he did not know at any time prior to the adjudication of bankruptcy that bankruptcy proceedings were imminent or even pending, and that he knew nothing of the matter before the proceedings were brought. The main banking business of the company (the bankrupt) was done, as defendants all the time knew, with the Rochester bank, and the company's account with defendants was small and local. The president of the bankrupt company testified that he did not think he ever discussed with defendants the amount of the company's liabilities to general creditors and that he did not think he had ever told them what the amount was; that the payments made upon the defendants' notes were made by him voluntarily and not pursuant to any request from them; and that he had never been asked for a specific payment of $1,000, or $500, or any other amount. The company had been asked, however, to reduce its indebtedness, for reasons elsewhere stated.

In the District Court, Judge Hazel stated that in his opinion the evidence was not sufficient to justify the conclusion that the defendants knew or had reasonable cause to believe that at the time the payments complained of were made a preference was intended. The evidence, however, discloses that these defendants were too easily satisfied as to the financial soundness of this company. It is strange that they did not at any time call for a statement from it of its assets and liabilities. But we do not think that the failure of the bankrupt to promptly pay the notes to the defendants at maturity is to be accepted

by us as sufficient to charge the latter under the circumstances of this case with notice of the impending insolvency. We do not doubt the entire good faith of the defendants. They were without notice of the impending insolvency and without sufficient facts to cause them to believe that a preference would result from the payments which they received within four months of the bankruptcy. As the defendants did not know or have reasonable cause to believe that a preference would result from any of the payments made to them, the trustee cannot maintain this suit under section 60b of the Bankruptcy Act.

[4] This brings us to inquire whether the payments made violated the provisions of section 66 of the New York Stock Corporation Law; for if they are invalid under the provisions of that law the trustee is entitled to recover them into his possession as a part of the bankrupt's estate by virtue of section 67e of the Bankruptcy Act. That the company was insolvent at the time the payments complained of were made seems beyond controversy. Indeed, the company appears to have been insolvent from the time it began business in July, 1908. Its liabilities at that time were in excess of its assets. From the beginning it did business on borrowed capital. In August, 1908, it borrowed $25,000 from the National Bank of Commerce in Rochester. In February 1909, the Rochester bank had under discount paper made or indorsed by the company amounting to $44,189.28. And in October, 1909, its indebtedness amounted to over $92,000. During the period when the alleged preferential payments were being made the company paid to the defendants and to the Rochester bank on the indebtedness owing to them the sum of $55,795.47, while paying little or nothing to general creditors. Its funds were so reduced that on August 6, 1909, 11 checks, aggregating $379.45, were drawn by the company to pay small invoices which had become due in May and June, but the checks were never delivered to the payees because of lack of funds. The trustee on taking possession of the property converted into cash all the personal property which came into his hands and realized only $879.78, which was insufficient to pay the expenses of administration. The unpaid indebtedness amounts to $41,909.52.

In October, 1909, these defendants and the Rochester bank were pressing the company for payments on the notes. The reason defendants asked to have payments made does not seem to have been due to doubts as to the solvency of the company, but was occasioned by the small balances that it maintained in defendants' bank. Their account was an unsatisfactory account. The company was giving defendants very little business, and the latter naturally objected to tying up $10,000 without a more active business and a better balance. The company, however, was unable to make any payments. All that it could do or did do was to renew the notes. The general creditors were also pressing their demands and were being paid nothing. Notes were allowed to go to protest. Eleven went to protest at the Rochester bank; three in October, 1909, two in November, four in December, and two early in January, 1910. A note for $688.52, which fell due on October 18, 1909, and went to protest, was allowed to lie under protest until November 9th, when it was renewed for its full amount. The re-

newal note went to protest on December 16th, and laid under protest until January 12, 1910, when it was paid. In the fall of 1909 the company bought no apples, having no money with which to do so. From October, 1909, to January, 1910, it was simply converting the old stock which had been left over from the year previous. During the whole period of four months from October 15, 1909, to February 15, 1910, when the petition in bankruptcy was filed, the company was hopelessly insolvent, not being able to pay its debts as they became due; and during that period of four months it was engaged in converting substantially all of its personal property into cash, and in seeing that the proceeds were used in paying the debts of two secured creditors, these defendants and the Rochester bank, and during the same period the company was avoiding the payment of anything to general creditors.

The result was that in the four months prior to the filing of the petition in bankruptcy these defendants were paid sums aggregating $6,500, and the Rochester bank $49,300, and the general creditors got nothing. The intent to prefer is as clearly disclosed in the facts of this case as in any case with which we are familiar. Every person is to be presumed to intend the natural and probable consequences of his own acts. In what was done a preference was given, and the corporation knowingly and purposely gave it. The testimony of the president that he felt that the assets were ample to take care of all the creditors, and that he figured paying the general creditors out of the real estate and the book accounts, is not convincing, in view of the fact that, when the trustee converted into cash all of the personal assets which came into his hands, he realized only $879.78 therefrom, and in view of the farther fact that, although he used every endeavor to find a purchaser for the company's real estate at Tonawanda, he was unsuccessful in his endeavor.

[5, 6] The conclusion we have reached can be supported without the testimony of the witness Swanton. There is, however, no reason why that testimony should be disregarded. It appears that that witness was the president of the National Bank of Commerce of Rochester, and as such had testified in a suit brought by the trustee of the bankrupt against that bank to recover certain payments made to it and which the trustee claimed were preferential and void as to him. In the case at bar this witness did not appear upon the stand to give his testimony in propria persona. But the counsel for the trustee stated that he desired "to offer as evidence in this case the testimony taken yesterday" of Swanton, taken in the other case, and the exhibits received upon his examination. Thereupon the counsel for the defendants said:

"We object to that, on the ground that whatever the transactions might have been between this bankrupt concern and the National Bank of Commerce can in no way be binding upon us."

The court allowed it to come in, stating that the testimony was received tentatively, "subject to being ignored when I come to examine the cases." Prior to the offer of this testimony, counsel for the trustee had offered the evidence given by the trustee in the other case, and with it certain exhibits. The court thereupon asked whether counsel

for defendants wished to cross-examine him on it. The counsel replied that he did not, saying:

"No sir, it is satisfactory; there is no objection to it, except whatever objections were made by Mr. O'Grady at that time I desire to make now."

Attention is called to the course followed respecting the reception of the trustee's testimony, and counsel's explicit declaration that he had no objection to offer, except such as he made when the testimony was originally given, and that he had no wish to cross-examine. The District Judge might well have understood, in view of what was said, that there was no other objection to the reception of the Swanton testimony than that the testimony was not material and relevant to the issue involved. And the formal assignment of error reads that the judge erred "in overruling the objection of the defendants to the admission of the testimony of Thomas J. Swanton on the ground that the same could in no way be binding upon these defendants." But on the argument in this court counsel contended that the admission of Swanton's evidence constituted reversible error, because he was thereby deprived of the right to cross-examination. That objection cannot now be raised, as a specific objection was raised below which did not include, and which therefore waived, the objection now suggested. If the objection now raised had been called at the time to the court's attention, the testimony would not have been received in the form it was offered.

[7] General objections to the admission of evidence are sufficient, where the ground therefor is so manifest that the trial court cannot fail to understand it. Deering Harvester Co. v. Kelly, 103 Fed. 261, 43 C. C. A. 225. But if the ground of the objection is not so manifest, then the objection must state the specific ground on which it is based. Patrick v. Graham, 132 U. S. 627, 10 Sup. Ct. 194, 33 L. Ed. 460. And when the objection is specific it is deemed to be limited to the ground or grounds specified, and it does not cover others not specified. Stebbins v. Duncan, 108 U. S. 32, 2 Sup. Ct. 313, 27 L. Ed. 641. It has been held that where specific grounds are stated the implication is that there are no others, or, if others, that they are waived. Texas, etc., R. Co. v. Watson, 190 U. S. 287, 23 Sup. Ct. 681, 47 L. Ed. 1057. The rule is established in New York, as in all the other states, the rule being of universal application, that the statement of a specific ground of objection to the introduction of evidence is a waiver of all other grounds of objection. Evans v. Keystone Gas Co., 148 N. Y. 112, 42 N. E. 513, 30 L. R. A. 651, 51 Am. St. Rep. 681; Commonwealth v. Mead, 153 Mass. 284, 26 N. E. 855; Plumb v. Curtis, 66 Conn. 154, 33 Atl. 998; Ewen v. Wilbor, 208 Ill. 492, 70 N. E. 575; Hathaway v. Goslant, 77 Vt. 199, 59 Atl. 835. In this case, the objection raised being specific, no other can be considered. The court below admitted the testimony, not as showing the intent with which the payments were made to the defendants, but for the purpose of showing the insolvency of the company. Under the circumstances its admission does not constitute reversible error.

[8] We are, however, asked to decide that the trustee is not entitled

in any event to recover the $5,000 represented by a note dated November 1, 1909, which was indorsed by O. L. Gregory and O. L. Alexander, and which was payable on demand. The balance due on that note was paid on January 18, 1910, and was then handed back by the defendants to the bankrupt without knowledge of the company's insolvency at the time and in entire good faith. It seems to be assumed that, while O. L. Gregory was financially irresponsible, O. L. Alexander was sound; and the argument is that in surrendering this note the defendants were purchasers for a valuable consideration and without notice of the property transferred to them for this note. The New York Stock Corporation Law, after declaring void transfers of property made in violation of the terms of the act, provides that:

"No such conveyance, assignment or transfer shall be void in the hands of a purchaser for a valuable consideration without notice."

The New York Court of Appeals in 1908 construed this statute in Perry v. Van Norden, 192 N. Y. 189, 84 N. E. 804. The court decided that where a trust company, holding notes of a corporation subsequently adjudged a bankrupt, which notes were indorsed by a perfectly good indorser in consideration of the transfer to it by the corporation of certain property, and without knowledge or notice which forbade it from doing so, surrendered its notes and thereby lost the security of the indorsements, it could not be required to return the property under the act. The trust company in that case held three notes made by the corporation which subsequently became bankrupt, which were not due and were indorsed by one who was solvent and responsible. The corporation assigned certain of its accounts and assets to the trust company, and obtained thereby the notes which had ever since remained in its possession. The result was that when the notes became due they were not presented for payment and were not protested. The court said:

"Thus it appears that the appellant, having notes made by a corporation subsequently adjudged a bankrupt, but indorsed by a perfectly good indorser, and having no knowledge or notice which forbade it from so doing, in consideration of the transfer of certain property, has given up its notes and lost the security of its indorsement, and is now asked to return the property which it received in the place of such indorsement. * * * The object and result of what was done was doubtless the protection and relief of the indorser. But, however this may be, we see no escape from the conclusion that the appellant in perfectly good faith has surrendered its notes and lost a perfectly good indorsement in consideration of the transfer to it of other property by the maker of those notes, and that under such circumstances it is not subject to the provisions of the statute prohibiting preferences, but is within the protection of those other provisions enacted for the benefit of purchasers for a valuable consideration and without notice."

The defendants rely upon the above decision, and assert that in surrendering the note on January 18, 1910, which note was payable on demand and had never been presented for payment, and in respect to which no notice of nonpayment had ever been given, they have now lost all right to proceed against the indorser, and so are within the principle of Perry v. Van Norden, supra.

The New York Negotiable Instruments Law, in section 131, pro-
vides that:

"Where it [the instrument] is payable on demand presentment must be made
within a reasonable time after its issue. * * *"

And the New York Court of Appeals in Crim v. Starkweather, 88
N. Y. 345, 42 Am. Rep. 250, in referring to what is to be regarded as
"reasonable time," said:

"This is not to be defined by any general term, but no case has been found
holding that 3½ years may elapse without discharging the indorser."

Moreover, if Alexander was entitled to the presentment and notice
of dishonor, he has not received any such notice.

[9] We have seen that Alexander was the president and the treas-
urer of the bankrupt. So that the question arises whether the pres-
ident and treasurer of a corporation, who indorses in his individual
capacity the note of his corporation, is an indorser entitled to present-
ment of the note for payment and notice of nonpayment. The question
is somewhat analogous to that which arises in the case of an indorser
who has become the executor of the maker of a note, who died before
its maturity. The latter question came before the Supreme Court of
Pennsylvania in 1827 in Juniata Bank v. Hale, 16 Serg. & R. (Pa.)
157, 16 Am. Dec. 558, and it was held that the indorser was entitled
under such circumstances to notice of nonpayment.

"Policy and the convenience of the public," said the court, "require a rigid
adherence to the rule; for, otherwise, exception would creep in after excep-
tion, and leave the law, which ought to be certain, open to speculation and to
doubt."

In Magruder v. Union Bank of Georgetown, 3 Pet. 87, 7 L. Ed. 612
(1830), the maker of the note died before it became payable and let-
ters of administration were taken out by one who had indorsed it.
No notice of the nonpayment of the note was given to the indorser,
and no demand of payment was made until the institution of the suit.
The Supreme Court, Chief Justice Marshall writing the opinion, held
that the indorser was discharged and that the fact that he had become
the administrator of the drawer did not relieve the holder from his
obligation to demand payment of the note and to give notice of non-
payment to the indorser. The court below had held otherwise, and
the argument was that under the circumstances presentment for pay-
ment and the giving of notice of dishonor was totally useless. The
Chief Justice declared that the indorser's contract was conditional, and
that his undertaking could become absolute only upon compliance with
the condition. The case came before the court again in 1833. Union
Bank of Georgetown v. Magruder, 7 Pet. 287, 8 L. Ed. 687. The
opinion in the second case was written by Mr. Justice Story, who,
referring to the decision rendered when the case was up before, de-
clared: "We are entirely satisfied with that decision." It seems to be
well settled that such is the law as to the right of an indorser who be-
comes the executor or the administrator of the maker to have notice
that he is looked to personally for payment. 2 Daniel on Negotiable
Instruments (6th Ed. 1913) § 1175. We are unable to see any distinc-

tion in principle between the case of an executor and that of a president or treasurer of a corporation. Each is entitled to notice and for similar reasons.

[10] The fact that the maker of a note is insolvent constitutes no excuse for neglect to make due presentment or to give notice of its dishonor. The reason is (1) that the contract of the indorser is conditional and not absolute, and (2) that without presentment it cannot be definitely settled that the instrument will be dishonored, as the means of payment may be furnished through friends. The English and the American authorities are agreed in this opinion. In Russell v Langstaffe, 2 Doug. 514 (1780), it is stated that:

"As to the bankruptcy, it had been frequently ruled by Lord Mansfield, at Guildhall, that it is not an excuse for not making a demand on a note or bill, or for not giving notice of nonpayment, that the drawer or acceptor has become a bankrupt; as many means may remain of obtaining payment, by the assistance of friends or otherwise."

In 1794 in the court of common pleas it was held that an accommodation indorser who knew when he indorsed that the maker was insolvent was not discharged because the note was not presented for payment when it became due or because notice of refusal to pay was not given him, Buller, J., said:

"It is said that the insolvency of the drawer does not take away the necessity of notice; that is true where value has been given, but no further."

Lord Chief Justice Eyre in the same case said:

"I, agree that, if the drawer is not known to be insolvent, the fact of insolvency will not excuse the want of an early demand; but the fact of knowledge excludes all the presumptions that would otherwise arise." De Bordt v. Anderson, 2 H. Black, 336.

In Barton v. Baker, 1 Serg. & R. (Pa.) 334, 7 Am. Dec. 620 (1875), the Supreme Court of Pennsylvania held that an indorser was entitled to notice, even though the fact of the insolvency of the maker was known to him when he indorsed and when the note became due. The Chief Justice said:

"Besides, if a man has nothing of his own he may have friends, who, to relieve him from pressure, will do something for him. The indorser, therefore, has a chance of securing himself at least in part. The only reason that can be assigned for insolvency taking away the necessity of notice is that notice could be of no use to the indorser. But it is almost impossible to prove that it might not have been of use. Therefore it is necessary."

And Yeates, J., said in the same case:

"It seems now settled that, notwithstanding it sounds harsh that a known bankruptcy should not be equivalent to a demand or notice, the rule as to both is too strong to be dispensed with." 2 Daniel on Negotiable Instruments (6th Ed.) §§ 1171 and 1172.

[11] But this brings us to inquire what effect upon the rights of the parties is to be given to the fact that prior to the indorsement and in authorization thereof the company had adopted the resolution before mentioned "that this company assign to the said O. L. Alexander as collateral security for the indorsements, as above stated, accounts re-

ceivable of this company" to the amount of $20,000: This was to take care of notes to the amount of $10,000 in the Rochester National Bank of Commerce and the two notes of $5,000 in the bank of the defendants. In Corney v. Da Costa, 1 Esp. 302 (1795) Mr. Justice Buller held that where an indorser had taken by assignment the effects of the bankrupt maker of a note he was not entitled to notice of the default in payment of the maker. That was a case at nisi prius. But in 1812 in the Court of King's Bench in Brown v. Maffey, 15 East, 215, 222, Bayley, J., alluding approvingly to that case, said:

"It would have been fraud in the indorser to call upon the maker of the note because before it became due the maker had deposited effects in his hands to answer the amount of his indorsement, and therefore he had no right to complain of the want of notice."

And in Mechanics' Bank v. Griswold, 7 Wend. (N. Y.) 165, 169 (1831), the case was cited approvingly by Judge Samuel Nelson, afterwards of the Supreme Court of the United States. In Perry v. Green, 19 N. J. Law, 61, 38 Am. Dec. 536 (1842), the Supreme Court of New Jersey cites a number of cases and declares that:

They "all show that where the indorser takes an assignment of all the estate of the maker, for the purpose of meeting his responsibilities, or has received effects into his hands to satisfy the amount of the indorsement, no demand or notice is necessary. The indorser, in such case, has made the debt his own, and he has no right to complain of the want of notice."

In Prentiss v. Danielson, 5 Conn. 175, 13 Am. Dec. 52 (1823), the Supreme Court of Connecticut declared that:

"If an indorser receives security to meet a particular indorsement, he waives a demand and notice, in respect of that indorsement, but not as to any other."

Justice Story, in his work on Promissory Notes (section 357), states that:

"If the security be to the full amount of the note, the indorser will be liable, without notice, for the full amount of the note; if the security be partial, he will be bound pro tanto."

And in his Commentaries (volume 3, page 113) Chancellor Kent declares that:

"If the indorser, before or at the maturity of the bill, has protected himself from loss by taking sufficient collateral security of the maker of the note, or an assignment of his property, it is a waiver of his legal right to require proof of demand and notice."

And Daniel on Negotiable Instruments, § 1128, volume 2, 6th edition, says:

"In the first place, the receiving by the drawer or indorser of money from the acceptor, maker, or other party for whose benefit the bill or note was made, for the avowed purpose of taking up the bill or note at its maturity, dispenses as to such drawer or indorser with the necessity of a presentment to the acceptor or maker for the obvious reason that the indorser becomes himself the person who should meet it. And so receiving any other property, with the agreement that he shall apply its proceeds to paying the bill or note at its maturity, has the same effect."

We think, without deciding the point, that there is some reason for holding that Alexander, in taking these accounts in pursuance of the

resolution referred to, assumed responsibility for the note of $5,000 given to the defendants by the company and indorsed by him, and that the necessity of presentment and notice was dispensed with. But we do not regard the matter as so free from doubt that this court should require the defendants to surrender now to the trustee the funds they received when they gave up the note. It is quite conceivable that, if an action were brought by the defendants against Alexander in the courts of the state of New York to recover on the note, the courts of that state might reach the conclusion that his taking of the securities did not amount to a waiver of presentment and notice, and that he is no longer liable on the note. The doctrine is not altogether free from criticism, and it is one upon which the courts may differ. See Daniel on Negotiable Instruments, §§ 1134, 1135. Indeed, in Taylor v. French, 4 E. D. Smith (N. Y.) 458 (1855), it was said by Judge Ingraham in the New York Court of Common Pleas:

"Mere security for the indorsement affords no reason for dispensing with demand. On the contrary, it furnishes a stronger reason why the indorser, who holds security, should be informed of the nonpayment. Without notice thereof, he might suppose it to have been paid, and in consequence of such neglect have parted with his security."

In that case the security was given at the time of the indorsement. In Seacord v. Miller, 13 N. Y. 55 (1855), the indorser was given as security a chattel mortgage, and the New York Court of Appeals held that this did not dispense with the necessity of presentment and notice. The court referred to the prior case of Spencer v. Harvey, 17 Wend. (N. Y.) 489, where demand and notice were held to be necessary notwithstanding a judgment had been confessed to the indorser to indemnify him against the payment of the note. And it was said:

"There must be something more, such as taking into his possession the funds or property of the principal, sufficient for the purpose of meeting the payment of the note, or he must have an assignment of all the property, real and personal, of the makers, for that purpose."

We are therefore compelled to hold that the trustee is not entitled to recover the moneys the defendants received for the note of $5,000. The surrender of the note and the possible loss of the security of Alexander's indorsement bring the case in our opinion within the principle announced in Perry v. Van Norden Trust Co., supra. The moneys so received—$508.53 on November 20, 1909; $1,000 on December 1, 1909; $1,000 on December 9, 1909; and $2,534.47 on January 18, 1910—are within the protection of that clause in the New York Stock Corporation Law which provides that no transfer shall be void in the hands of a purchaser for a valuable consideration without notice.

The amount of the decree entered against the defendants must be modified, so as to conform to this opinion as respects the above-mentioned payments, and is in all other respects affirmed.

It is so ordered.