68 U.S. 269
 17 L.Ed. 580
 1 Wall. 269
 STURGIS
v.
CLOUGH.
 December Term, 1863
 
 ERROR to the Circuit Court of the United States for the Southern District of New York, the case being thus:
 The steamer Mabey had injured the steamer Hector in a collision, and had been libelled for damages. It being referred by the court to a commissioner to assess these damages, the owners of the Hector claimed the whole cost of the repairs, and also damages for fourteen days' demurrage, during which the repairs were getting done. The commissioner awarded,
 For repairs, being the full cost of them, $2162 80
 For demurrage, fourteen days, as claimed, _1099 50
 $3262 30
 The Hector was an old vessel,—twenty years old, it was testified,—her guards and deck, which were now repaired, having been in a very decayed condition, and her whole hull, comparatively, worthless. Still she was a navigating vessel, and was engaged, at the time of the collision, in towing vessels to and from sea, about the harbor of New York. Several witnesses were brought, who testified that there was a great demand for labor at that time, and who gave their opinions as to what the vessel might have made per day, if engaged. But the owner did not exhibit, nor offer to exhibit, his books, to show what she actually had made previously; and some of the testimony was of a general, rather than of a special kind. The court below, in deciding the case, said as follows:
 'We are not satisfied that the proofs bring the case upon the question of damages within the rule laid down by the Supreme Court, in Williamson v. Barrett.* A good deal of the testimony was general, and turned upon mere opinion as to the probability of employment in the towing business, and the amount of the earnings, if employed. This kind of proof is too speculative and contingent to be the foundation of any rule of damages: it is, at best, but conjecture. The true question within the case of Williamson v. Barrett was, what could the tug have been chartered for per day in the business of towing, regard being had to the market price in the city of New York? This would have brought the question down to some degree of certainty, and afforded ground for an intelligible allowance or not, of the loss which the libellant had actually sustained by the delay during the repairs. We shall, therefore, strike out the item for demurrage, $1099 50, and confirm the decree for $2162 80.' Application was afterwards made to the court to reconsider this decision, which it did; and after advisement said as follows:
 'In passing upon the question of demurrage, and in refusing the taking of further testimony in respect to it, I was influenced, as to the latter result, from a conviction that the repairs allowed were greater than justified upon the proofs. These have to be watched, as in cases of collision there is an opportunity, and not unfrequently a disposition, by the successful party, to aggravate them. I should have been obliged, therefore, to set aside the whole report; and the withholding of the reference in the demurrage satisfied me the result would be about just between the parties on the whole case.'
 The refusal in the decree below to allow anything for the detention of the vessel for the time she was detained, was the error assigned by the libellant.
 Mr. Jones, for the libellant, contended that the language of the decree showed specifically that demurrage was rejected. The court here had to do with nothing but the decree. The course of thought passing through the judicial mind was hardly to be considered against a judicial record. There was no doubt as to what the decree was, and the exact sum awarded by the commissioner for damages was the exact sum total of the final decree. Demurrage was exactly and specifically rejected; yet there was no doubt that there ought to have been some demurrage. It is impossible to deny that the libellant did sustain a loss by reason of the detention of the vessel for the period of fourteen days. If the commissioner erred in awarding too large a sum for demurrage, or if any error was committed by him in the rule which he adopted in determining the amount on the evidence, or if there was any error in the manner in which such loss was attempted to be proved, an opportunity have been given to correct the error.
 Mr. Justice GRIER delivered the opinion of the court:
 
 
 1
 From the manner in which this decree was drawn, it might be inferred that the court had refused to allow anything for demurrage. But on reference to the record, it appears that this sum was allowed by the judge, because he thought that 'the result would be about just between the parties on the whole case.' The sum reported by the commissioner has not the effect of a verdict. The court may not concur in his conclusions upon the facts reported, and may modify or wholly reject it. The court did not decide that demurrage was not a proper item to be allowed in the computation of damages, but that the amount of his decree was a just allowance for all damages sustained by libellant. On reviewing the evidence, we are satisfied that the sum allowed in the decree was 'just between the parties.' The report of the commissioner, allowing the whole bill for repairs, was not just, because the repairs necessarily made were chargeable not wholly to the collision, but to the age and previous condition of the boat. The charge for demurrage allowed by him was not justified by the evidence, although there was testimony to support it, such as can always be obtained when friendly experts are called to give opinions. Besides, the libellant withheld the best evidence of the profits made by his boat, which would be found in his own books, showing his receipts and expenditures before the collision.
 
 
 2
 We believe the decree gave the libellant ample reparation for all damages, as well for demurrage as repairs.
 
 
 3
 DECREE AFFIRMED.
 
 
 
 *
 13 Howard, 101.