## THE BESSIE MORRIS.[*]

*(District Court, E. D., Pennsylvania. July 21, 1882.)*

1. ADMIRALTY—COLLISION—BURDEN OF PROOF.

> Where a vessel having the right of way is injured by a collision, the burden of proof is upon the other vessel to show proper care; and if the testimony of her witnesses is contradicted, and is in conflict with the probabilities of the case, a decree will be entered against her.

2. SAME—LOOKOUT—STEWARD.

> It is doubtful whether a steward is a competent lookout, but he certainly is not when his attention is divided between such duty and the duties belonging to his employment as steward.

Libel by the owners of the schooner William Marshall against the schooner Bessie Morris to recover damages for injuries caused by a collision. The facts were as follows:

About noon on August 6, 1881, the Marshall, bound to Boston with a cargo of coal, was beating down the Delaware river, and when on a port tack about mid-channel collided with the Morris, which was sailing up the river light, with the wind free and directly astern. On the Morris the only man forward of the wheel was the steward, who was about half-way between the foremast and mainmast and between the cabin and forecastle, in which the officers and men respectively were at dinner, he being in that position to answer their calls and wait on the tables. Libelants claimed that the collision was caused by the fact that there was an insufficient lookout kept on the Morris; that the approach of the Marshall was not reported until the vessels were close together; and that then the Morris, instead of passing under the stern of the Marshall, ported her wheel and came across the latter's bows. The respondents claimed that the collision was caused by the Marshall, when on her starboard tack in mid-channel, and only about 200 feet from the Morris, suddenly, and without necessity, tacking and coming across the latter's bows on the port tack.

*Edward F. Pugh* and *Henry Flanders,* for libelant.

*Edward S. Sayres, Alfred Driver,* and *J. Warren Coulston,* for respondent.

BUTLER, D. J. That libelant had the right of way, and respondent was consequently bound to keep off,—unless the former by disregarding ordinary rules of navigation, improperly ran into danger,—is not only plain, but conceded by counsel. The burden of proof is, therefore, on respondent,—a very important fact in view of the conflicting character of the testimony. She alleges that libelant prevented her keeping off, by suddenly and improperly coming-about,

[*]Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

near mid-channel,—directly after crossing her bows, when only about
200 feet away, as described in the answer.   That is the only defense;
and, in my judgment, it is not proved.   The testimony of respond-
ent supports it, but the answering testimony of libelant, apparently
as credible, (in part from disinterested witnesses,) is directly the
reverse, while the probabilities of the case seem to be with the latter.
Under the circumstances described in the answer, and by respond-
ent's witnesses, it appears incredible that libelant could come-about
and place herself in respondent's way, as alleged.   Considering the
latter's speed, the direction of wind and tide, the given distance
between the vessels, and the length of time required by libelant to
come-about, it is difficult to believe that she could get back to respond-
ent's path before the latter had passed,—even without change of
course.   It is more difficult, however, to believe that respondent,
under the circumstances described,—seeing libelant's purpose,—
might not have passed in safety by immediately changing her course
eastward.

The libelant did not run as near the western shore as was possible.
Precisely how near she ran is uncertain.   According to her own wit-
nesses it was almost as near as prudence permitted,—in view of the
circumstances they relate.   In the absence of all direct evidence on
the subject the presumption would be that she did so.   It was her
interest to run her tack out fully.   But how near she ran to the
western side is unimportant, unless it appears that she improperly
and unexpectedly came-about with respondent close by, as alleged.
As already indicated, I believe the testimony not only does not show
that she did thus come-about, but that its weight is the other way.
The suggestion that she had only gotten around when struck, that
her wheel had not been changed, to straighten on her course, and
the argument based upon it, are not warranted by the evidence.   The
testimony of the mate, who was at the wheel, is full and clear, to
the contrary,—while the testimony of the master and officers of the
Roland Stanford, who witnessed the collision, sustain his state-
ment.   I cannot doubt that libelant had straightened on her course,
and run some distance, before she was struck.   I can only account
for respondent's failure to keep off upon the hypothesis that her look-
out was defective, and that she consequently failed to see libelant until
close upon her.   That the lookout was defective is clear.   The com-
petency of the steward for this service was doubtful, at least.   But, in
addition to this, his attention at the time was divided between that
service and those belonging to his employment as steward, and he

consequently did not see the vessel untill within 200 feet, or if he did see did not report. It is not improbable that the respondent might still have passed safely to the westward, but in the confusion she attempted to pass under libelant's bows and struck her. (See assessor's answers, filed herewith.) A decree must be entered in libelant's favor.

The court propounded certain questions to a nautical expert, called as an assessor, which, with the answers thereto, were as follows:

(1) Suppose the Bessie Morris to have been coming up the river 200 feet or thereabouts away, and the William Marshall to have crossed her bows westward at that distance, and then to have come about, as described in the answer handed you, (the wind and tide being as stated therein,) would the latter vessel have gotten back so as to come in contact with the Bessie Morris?

*Answer.* She could not have gotten back in time to come in contact, for in the act of coming about she would have gone ahead down the river to a point below the other vessel before she would have filled away on her eastern tack.

(2) If the William Marshall had her sails trimmed at the time of collision, as stated in the answer, is it or is it not probable that she was considerably further westward than stated in the answer when she came about?

*Answer.* It is very probable that she came about considerably further westward, because otherwise she would not have been filled away on the eastern tack before she came in collision, for she could not have done this within 200 feet.

---

### Collision—Damages Allowed—Rights of Insurer.

THE POTOMAC and others, U. S. Sup. Ct., Oct. Term, 1881. Appeal from the circuit court of the United States for the district of Louisiana. The case was decided in the supreme court of the United States on May 8, 1882. Mr. Justice *Gray* delivered the opinion of the court partly reversing the decree of the circuit court.

In order to make full compensation and indemnity in a case of collision for what has been lost by the collision,—*restitutio in integram*,—the owners of the injured vessel are entitled to recover for the loss of her use while laid up for repairs. When there is a market price for such use, evidence of the profits she would have earned if not disabled is competent; but from the gross freight must be deducted so much as would, in ordinary cases, be disbursed on account of her expense in earning it. In no event can more than the net profits be recovered by way of damages; and the burden is on the libelants to prove the extent of the damages actually sustained by him. The mere payment of a loss by the insurer does not afford any defense to a person whose fault has been the cause of the loss in a suit brought against the latter by the assured; but the insurer acquires by such payment a corresponding right in any dam-

ages to be recovered by the assured against the wrong-doer, or other party responsible for the loss, and may enforce this right by action at common law in the name of the assured, or, when the case admits of proceeding in equity or admiralty, by suit in his own name. The right of the insurer is not contingent on the loss having been total, or upon its having been followed by an abandonment, but rests upon the ground that his contract is in the nature of a contract of indemnity, and that he is therefore entitled, upon paying a sum for which others are primarily liable to the assured, to be proportionally subrogated to his right of action against them. But the insurers are entitled only to damages to be recovered for an injury for which they have paid, and to such proportion only of those damages as the amount insured bears to the valuation of the policies.

T. D. Lincoln, for appellants.

W. W. Howe, J. H. Kennard, and Bentinck Egan, for appellee.

Cases cited in the opinion: The Caroline, 17 How. 170; The Francis Wright, 4 Morr. Trans. 487; The S. C. Tryon, Id. 360; Williamson v. Barrett, 13 How. 101; Sturgis v. Clough, 1 Wall. 269; The Cayuga, 2 Ben. 125; 7 Blatchf. 385; 14 Wall. 270; The Gazelle, 2 W. Rob. 279; S. C. 3 No. Cas. 75; The Clarence, 3 W. Rob. 283; S. C. 7 No. Cas. 579; Hall v. Railroad Co. 13 Wall. 367; Comegys v. Vasse, 1 Pet. 193; Fretz v. Bull, 12 How. 466; The Monticello, 17 How. 152; Garrison v. Memphis Ins. Co. 19 How. 312. See, also, The Sarah Ann, 2 Sumn. 206; The Ann C. Pratt, 1 Curt. 340; Clark v. Wilson, 103 Mass. 219; Yates v. Whyte, 5 Scott, 640; S. C. 4 Bing. N. C. 272; 1 Arnold, 85; Simpson v. Thompson, Law Rep. 3 App. Cas. 279; White v. Dobinson, 14 Sim. 273; Quebec Assu. Co. v. St. Louis, 7 Moore, P. C. 286; Dickenson v. Jardine, Law Rep. 3 C. P. 639; Darrell v. Tibbetts, Law Rep. 5 Q. B. D. 560; North of England Ins. Ass'n v. Armstrong, Law Rep. 5 Q. B. 244; Gen. Mut. Ins. Co. v. Sherwood, 14 How. 351.