### In re HIBBARD et al.

Circuit Court of Appeals, Second Circuit. July 9, 1928.

No. 337.

**1. Bridges ⊕⟶27—Announcement of willingness to restore damaged bridge for specified sum held equivalent to bid, which became limit of recovery against damaging vessel, when new bridge built.**

Where vice president of responsible construction company, at hearing before United States engineers having supervision over river to consider construction of temporary bridge, announced willingness to restore bridge, which had been damaged by petitioners' vessel colliding therewith, for specified sum, *held*, that such announcement, though not in form of offer, was equivalent to bid, and became limit of recovery against vessel owner, where bridge was never repaired, but was superseded by new one.

**2. Bridges ⊕⟶27—Allowance of interest in decree for damages to bridge by vessel is governed by rules governing other actions, except that it is discretionary.**

Allowance of interest in decree awarding damages to bridge by vessel colliding therewith is governed by same rules applicable to other forms of action, except that award is always discretionary.

**3. Bridges ⊕⟶27—Allowance of interest in decree for damages to bridge held not improper, because bridge was replaced by new one.**

Allowance of interest in decree awarding damages for damages to bridge over river by collision of vessel therewith from date five months after the collision, at which time bridge could have been restored, *held* not improper, because bridge was never restored, but was replaced by a new one.

Appeal from the District Court of the United States for the Southern District of New York.

Proceeding by Charlton B. Hibbard and others, as owners of the motorship Glendaruel, for limitation of liability. From a final decree in admiralty, awarding damages to the Counties of Hudson and Essex, in the State of New Jersey, because of collision by petitioners' vessel with a drawbridge across the Hackensack river, petitioners appeal. Decree modified, and, as modified, affirmed.

Appeal from a final decree in admiralty of the District Court for the Southern District of New York, awarding damages to the appellees because of a collision with their drawbridge across the Hackensack river by the appellant's steamer, the Glendaruel.

On June 22, 1922, the Glendaruel fouled a drawbridge crossing the Hackensack river, owned by the counties of Hudson and Essex in the state of New Jersey. Hibbard, the Glendaruel's owner, petitioned to limit his liability, and the counties filed a claim and disputed the limitation. On the trial the District Court found the Glendaruel at fault, but Hibbard entitled to limit his liability. The interlocutory decree directed a reference to a commissioner, who took the evidence and whose report the District Court confirmed. Hibbard appealed.

The question relates only to the amount of the award. The draw was broken into two parts by the shock, and was in fact never repaired; the whole bridge itself being superseded by another. It became necessary, therefore, to estimate the cost of its restoration to its original condition; that being the measure of damages adopted, and not seriously disputed. Within a month of the collision a public hearing was held before United States engineers, who had supervision over the river, to consider the construction of a temporary bridge. Both Hibbard and the counties were represented, and Hibbard produced one French, a responsible engineer, and one Ripley, vice president of a responsible construction company, who described a plan which they had prepared to restore the draw. At the same time Ripley announced

his willingness to undertake the work for $100,000, adding that French had carefully gone over the figures, which he would submit, if desired. This plan was to lift the separated arms upon car floats and rejoin the draw into one piece. The representative of the counties refused to consider the plan, and nothing came of the suggestion.

At the hearing before the commissioner, Hibbard again produced French and Ripley, who then testified fully as respects their calculations and the plan. On the other hand, the counties called engineers to show that the plan was not feasible, and that the cost of proper reconstruction would be substantially greater than $100,000. The commissioner found that the plan was practicable, but that in some respects Ripley's figures were too low. These related to the cost of certain of the materials, to certain extra charges, and to an allowance for supervision by the counties' engineers. He awarded $130,000, with interest.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and P. Fearson Shortridge, both of New York City, of counsel), for Hibbard.

Hunt, Hill & Betts, of New York City (George C. Sprague, of New York City, of counsel), for the counties.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1] The French plan either was, or it was not, such that the counties were bound to use it; the same is true of Ripley's estimate. The commissioner has found that the plan was practicable, and, though he has not expressly said so, his report is consistent only with the finding that it limits the counties in their damages. We start with that assumption. So far as Ripley's estimate covered the repairs, we cannot see that it makes any difference that it was not in the form of an offer. It was equally available, and the counties might not reject it, any more than any other victim of a tort may reject the best means of recoupment at hand. However, there is considerable doubt whether it covered that testing of old material which the counties' experts demanded. If it did not, Ripley would presumably not have stood by it, but would have required a larger sum. The commissioner appears to have thought that the added expense could be covered by the owner's engineering charge. That would be true, if he did the testing, and it resulted in no added loss of material; but it is not apparent that either is true. We can solve this only by saying that, in finding the plan practicable, the commissioner must be understood to have found it practicable as French and Ripley proposed it; that is, with their tests and their replacements. If so, it follows that Ripley's estimate, which was the equivalent in our judgment of a bid, became the limit upon their recovery.

There remains, then, only the question of what it did not cover, upon which it does not seem to us necessary to say much. Of the extras which the commissioner allowed at $4,000 we allow for the railing, painting, and bond $2,750, to which we add 20 per cent. of their cost, or $3,300 in all, making $103,-300 as the basic price.

It seems to us that Hibbard has not proved that the counties' engineers were fitted to supervise the construction, which, being altogether novel, might reasonably have required close scrutiny. The customary allowance for this is 10 per cent., making the total award $113,630, instead of $129,558. As the whole estimate is plainly speculative at best, we will reduce the award by $15,000, making it $115,000, instead of $130,000.

[2,3] The commissioner allowed interest from November 22, 1922, five months after the collision, at which time the draw could have been completed. Had the bridge been repaired, this would, of course, have been proper, because by that time all the money would have been expended. However, none of the repairs were ever made, and Hibbard argues that in this circuit interest cannot be allowed in the admiralty, except upon actual repairs. We know of no such doctrine, and regard the question as determined by the same rules which apply to other forms of action, except that the award is always discretionary. The allowance of interest has in recent years been granted with increasing liberality, and the case at bar falls within our rulings in Stephens v. Phoenix Bridge Co. (C. C. A.) 139 F. 248, Demotte v. Whybrow, 263 F. 366 (C. C. A. 2), and Lehigh Valley R. R. v. State of Russia, 21 F.(2d) 396 (C. C. A. 2). Before the claim of the counties had been filed, the items now allowed by us were already fixed, or capable of easy ascertainment. Ripley's estimate had been made, the value of the extras could be learned from existing prices for such work, and the percentage for supervision was established in such cases. Perhaps the commissioner might have awarded interest from an earlier time, but, as the point is not raised, we need not consider it.

Decree modified, by reducing the award to $115,000, and, as modified, affirmed. No costs.