William A. BISSO, Jr., Receiver, New Orleans Coal & Bisso Towboat Company, Libellant,

v.

INLAND WATERWAYS CORPORATION, Respondent.

No. 910.

United States District Court E. D. Louisiana, New Orleans Division.

March 23, 1956.

---

Deutsch, Kerrigan & Stiles, Francis Emmett, New Orleans, La., for libellant.

George R. Blue, M. Hepburn Many, New Orleans, La., for respondent.

J. SKELLY WRIGHT, District Judge.

In prior proceedings in this case,[1] respondent has been held liable for the value of the Steel Tank Barge Bisso No. 9 on the date of her loss, May 12, 1944. The Commissioner's report on valuation of this vessel at the time of the loss has been filed.[2] He finds that the vessel had a reproduction cost of $31,000, to which he added $7,350 charter hire, contracted for but not earned by the vessel at the time of the loss, making a total valuation of $38,350, from which he subtracted the barge's salvage value following the casualty of $1,800, thus arriving at a net valuation of $36,550.

■■ The Commissioner's valuation is clearly erroneous and must be disregarded.[3] Instead of finding market value, as he was required to do under the law,[4] he found only reproduction cost, to which he added $7,350 of unearned charter hire, which, of course, is not an assessable item of damage.[5] The Commissioner also rejected depreciation as a consideration in determining valuation where reproduction cost is used.[6] This court, therefore, will proceed de novo in

1. Bisso v. Inland Waterways Corp., D.C., 114 F.Supp. 713, 1953 A.M.C. 1664, affirmed, 5 Cir., 211 F.2d 401, reversed 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911.

2. The complete Commissioner's Report reads as follows:
   "On Monday, July 25, 1955, pursuant to Notice dated July 14, 1955, the testimony of the following witnesses was taken before me: Arthur A. Grant; William A. Bisso, Sr.; William A. Bisso, Jr.; Frank A. Geffs; Frank Riess.
   "On September 16th and 23rd, 1955, pursuant to an appointment of this Honorable Court to act as Commissioner to determine the valuation of Bisso Oil Barge No. 9, the testimony of the following witnesses was heard: Captain Harry Koch; Alvah C. Landwehr; Sam P. Stone.
   "At the conclusion of all the testimony and argument of Counsel, Proctors were given an opportunity to submit memoranda, which they did in October 1955.
   "Price of construction in 1944 of a similar oil Barge as the Bisso No. 9, after taking all the evidence of Libelant's and Respondent's witnesses into consideration, would, in my opinon, be approximately $31,000.00 and, amount of

the Charter which was lost to Libelant added to that amount at $1100.00 per month, would be $38,350, less $1800.00 paid the Bisso Company for the derelict, making the final valuation of said Barge $36,550.00."

3. United States v. Kirkpatrick, 3 Cir., 186 F.2d 393, 1951 A.M.C. 355; Pioneer Import Corporation v. The Lafcomo, 2 Cir., 159 F.2d 654, 1947 A.M.C. 284; Todd Erie Basin Dry Docks v. The Penelopi, 2 Cir., 148 F.2d 884, 1945 A.M.C. 541.

4. Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890; Carl Sawyer, Inc., v. Poor, 5 Cir., 180 F.2d 962, 1950 A.M.C. 873.

5. The Umbria, 166 U.S. 404, 17 S.Ct. 610, 41 L.Ed. 1053; Ozanic v. United States, 2 Cir., 165 F.2d 738, 1948 A.M.C. 340; O'Brien Bros., Inc., v. The Helen B. Moran, 2 Cir., 160 F.2d 502, 1947 A.M.C. 493.

6. Depreciation, of course, must be considered when valuation is based on reproduction cost. Standard Oil Co. of New Jersey v. Southern Pacific Co., supra; De La Rama S.S. Co. v. United States, 2 Cir., 206 F.2d 651, 1953 A.M.C. 1602; Carl Sawyer, Inc. v. Poor, supra; United

fixing the value of the Bisso No. 9 on May 12, 1944.

■■■ Where a vessel is a total loss, the measure of damages is its market value at the time of the loss.[7] Market value is defined as that sum which would be paid for the vessel by a willing buyer after fair negotiations with a willing seller. Standard Oil Co. of New Jersey v. Southern Pacific Co., supra. Usually market value is established by contemporaneous sales of similar property in the ordinary course of business. Where market value cannot be established by contemporaneous sales, other evidence is resorted to. Standard Oil Co. of New Jersey v. Southern Pacific Co., supra. Such other evidence may consist of any circumstance which would reasonably influence the valuation of the vessel at the time in question. Carl Sawyer, Inc., v. Poor, supra. "The ascertainment of value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment having its basis in a proper consideration of all relevant facts." Standard Oil Co. of New Jersey v. Southern Pacific Co., supra, 268 U.S. at page 156, 45 S.Ct. at page 467.

While "reconstruction cost less depreciation is an accepted guide to lead the way to the determination of the value of a vessel when market value cannot be shown",[8] it is not an absolute measure of a vessel's value. It is merely "one of the relevant facts, all of which must be considered in arriving at a fair judgment of value."[9] For example, in addition to reproduction cost less depreciation, capitalization of earning capacity, book value to the owner, opinions of marine surveyors and engineers, the amount of insurance on the vessel are

additional criteria [10] which may be helpful in arriving at the sometimes elusive concept of what a willing buyer would pay to a willing seller for the property in question.

In suit here for judgment of valuation is a steel tank vessel 175′ in length, 40′ in beam, 9.5′ in depth, with a rated carrying capacity of 9,000 barrels. It was completed in 1942 at a cost of $25,000, and at the time of loss on May 12, 1944, her insurance coverage was $20,000.[11] At the time of her loss, the barge was operating under a charter expiring November 21, 1944, for $1,100 per month. After her loss, the vessel was recovered and sold as scrap for $1,800.

The record shows, and the parties agree, that there were no contemporaneous sales of similar vessels in 1944 for the reason that this country was at the time at war, and the Government, in coordinating war efforts, had virtual control of all tank barges and shipyards. In the absence of contemporaneous sales, the parties have largely limited their efforts to prove valuation to proof of reproduction costs. Libellant claims that the proper valuation of the barge after subtracting $1,800 for salvage is $45,350, while respondent argues that the Commissioner's finding as to the reproduction cost of $31,000 should be accepted, but that depreciation at 5% per annum plus salvage of $1,800 should be deducted therefrom, leaving a total of $26,100 as the measure of damages in this case.

In its efforts to prove reproduction cost, libellant used five witnesses, three independent experts and two of its employees, who arrived at reproduction costs of the vessel, at the time of the

States v. Eastern S.S. Lines, Inc., 1 Cir., 171 F.2d 589, 1949 A.M.C. 243; Ozanic v. United States, supra; The Hisko, 2 Cir., 54 F.2d 540, 1932 A.M.C. 7.

7. See note 4.

8. De La Rama S.S. Co. v. United States, supra, 206 F.2d at page 655, 1953 A.M.C. at page 1607.

9. The Hisko, supra, 54 F.2d at page 541.

10. Carl Sawyer, Inc., v. Poor, supra; O'Brien Bros., Inc., v. The Helen B. Moran, supra.

11. The libel states that the value of the Bisso No. 9 on May 12, 1944 was $35,000.

loss, of $38,824.44, $38,500, $43,000, $39,000 and $40,000 respectively.[12] Respondent used three expert witnesses who testified that reproduction cost of the Bisso No. 9 at the time of loss was $32,000, $35,354 and $30,690.[13]

12. The testimony of libellant's witnesses is summarized as follows:

Marine Surveyor Arthur Grant testified that the only reasonable means available to a private owner for replacing a steel tank barge in 1944 was new construction. Accordingly, he used reproduction cost as the primary predicate for his appraisal of the Bisso No. 9's worth when lost. Mr. Grant estimated that the Bisso No. 9 weighed 193.6 long tons; that new construction costs in 1944 averaged 9 to 10 cents per pound, and on that basis, the barge's reproduction cost would have been $39,029. He also estimated her reproduction cost by rule of thumb at $4.50 per barrel carrying capacity, and on that basis found her reproduction cost would have been $40,500. Mr. Grant then considered a quoted reproduction cost of $36,000 which had been obtained from Nashville Bridge Company on May 22, 1944, added $1,000 to that sum for towage from Nashville to New Orleans, totaled all three reproduction costs and arrived at a mean of $38,824.44. This sum he considered the most nearly accurate possible estimate of the reproduction cost of the Bisso No. 9 when lost.

Naval Architect Frank A. Geffs also estimated the reproduction cost of the Bisso No. 9. On a take-off from the plans of the vessel, he found that the vessel's exact weight was 385,792 pounds. Mr. Geffs testified that, on the basis of records kept by him in 1944, shipyard fabrication costs at the time of the instant loss were 10 cents per pound for tank barge construction, and he accordingly estimated the Bisso's reproduction cost at about $38,500.

Mr. Frank Riess, a licensed civil, mechanical and electrical engineer with fifteen years of experience in building such vessels, based his testimony on a formula which took into account the weight of the vessel, costs of material and labor, general administrative expenses and profit ratios prevailing in shipyards at the time of the sinking. On this basis, he estimated reproduction cost of the barge at $43,000.

Messrs. William A. Bisso, Sr. and Jr., libellant's managers, both of whom have had many years of experience in operating and buying and selling vessels of all types, estimated that the Bisso No. 9 had a value of $39,000 or $40,000 when lost. Their opinions were based on prevailing conditions with respect to reproduction costs, difficulties in obtaining new barges, and the favorable charter market.

13. The testimony of respondent's witnesses is summarized as follows:

The first witness produced by the Government was Captain Harry Koch, president of Avondale Marine Ways, a local shipyard. He testified that his yard constructed in 1941 three 8,200-barrel oil barges at average cost of $22,000 each, which ran about $2.68 per barrel of cargo carrying capacity. Captain Koch also testified that his yard built in 1945 two barges, also of 8,200-barrel capacity. His cost for these barges averaged $29,221 apiece, or $3.56 a barrel. He further stated that the costs were almost identical in 1944 and 1945, with the difference being a slight rise in prices for the latter year. On this basis, he considered that the cost of reproducing the Bisso No. 9 new in 1944 would have been $32,000.

The Government also produced Mr. Alvah C. Landwehr as a witness. Mr. Landwehr is the Chief of Plant and Equipment Section of the Lower Mississippi Valley Division of the Corps of Engineers, and has direct responsibility for $15,000,000 of floating equipment from St. Louis to New Orleans. He testified that the Corps of Engineers presently has a number of Defense Plant Corporation barges which were built on commercial contract for the United States Government during the war years. These steel tank barges are similar, though not identical, in size and construction to the Bisso No. 9. He produced the official records relating to these DPC barges built during 1944. All contracts, not just selected contracts, were produced. He testified that the DPC barges were larger than the Bisso No. 9, being 9,586-barrel capacity, were heavier in construction, and had heating coils valued at $5,000 as of 1944 which the Bisso barge did not have. Converting the cost of the DPC barge to read in terms of the barge in type and size of the Bisso No. 9, Mr. Landwehr arrived at a total of $35,354 as his estimate of the cost of reproduction of the Bisso No. 9 in 1944.

The Government's last witness was Mr. Sam P. Stone, presently Chief Engineer at Avondale Marine Ways. Mr. Stone testified that in 1945 Avondale built a group of ten barges of 8,200-barrel

After a study of the testimony of all the witnesses and a consideration of the methods by which they arrived at the reproduction cost, it is this court's opinion that the reproduction cost of the Bisso No. 9 on May 12, 1944 was $35,000. This figure is approximately the same as the one obtained by the Government's expert, Landwehr, based on the actual cost of similar barges constructed for the Government in 1944. It also approximates a reproduction cost of $36,000 obtained on May 22, 1944 from the Nashville Bridge Company, builder of the Bisso No. 9. The quotation from the Nashville Bridge Company and the calculation of Landwehr are deemed to be more reliable guides to actual reproduction cost than the estimates of the other expert witnesses.

 This reproduction cost of $35,000, however, is not the valuation of the vessel. At the time in question, it is highly doubtful that any private person, such as the libellant herein, would have been able to obtain the necessary steel and shipyard facilities to build a vessel similar to the Bisso No. 9. This circumstance, of course, increases the amount that a willing buyer would pay to a willing seller for the barge. It must, therefore, be considered in determining market value. An indication of this increase is shown by the fact that libellant was able to charter the vessel for $1,100 per month. Since this enhancement in value is not reflected in the reproduction cost, it must be added to the reproduction cost of the vessel on the day of the loss. This enhancement, while difficult to estimate with any degree of accuracy, would be at least $3,000, which must be added to reproduction cost after depreciation. Allowing depreciation at the usual 5% per annum for two years and subtracting the $1,800 in salvage, the net recovery in this

case for the libellant is $32,700 plus interest.

Libellant maintains that depreciation should not be charged against reproduction cost for the Bisso No. 9 because the scarcity of vessels at the time was such that a barge two years old would bring the same price as a new barge, and that the value of such vessels during the war was actually increasing rather than decreasing. This suggestion will not bear analysis. The increase in value of the barge has already been taken into account in estimating not only the cost of reproduction, but also the enhancement in value resulting from the difficulty in procuring steel and shipyard facilities to build a barge during the war. Libellant's suggestion that no depreciation be charged is indeed novel. In no case, and there have been many involving total loss during wartime, has a court failed to allow depreciation where valuation is predicated upon reproduction cost.[14]

Decree accordingly.

---

capacity similar in construction to the Bisso No. 9. These sold for $28,000 each, which was computed to be $3.41 per barrel cargo capacity. Mr. Stone testified that the costs between 1944 and 1945 varied little, and that the $3.41 per

barrel would be a fair estimate of the building cost in 1944 of the Bisso No. 9. On this basis, the reproduction cost of the 9,000-barrel Bisso No. 9 in 1944 would have been $30,690.

