233 F.2d 444
 THE Tanker HYGRADE NO. 24, Inc., as owner of The Barge
Hygrade No. 24, Libellant-Appellee,
v.
THE Tug DYNAMIC, Conners-Standard Marine Corporation,
Claimant-Appellant.
 Nos. 329, 23998
 United States Court of Appeals Second Circuit.
 Argued April 5, 1956.
Decided May 16, 1956.
 
 Purdy, Lamb & Catoggio, New York City (Vincent A. Catoggio, New York City, of counsel), for claimant-appellant.
 Foley & Martin, New York City (Christopher E. Heckman, New York City, of counsel), for libellant-appellee.
 Before FRANK, MEDINA and WATERMAN, Circuit Judges.
 MEDINA, Circuit Judge.
 
 
 1
 Libellant-appellee is the owner of Hygrade No. 24, a barge was which damaged in a collision with claimant-appellant's tug Dynamic. In a prior opinion, the District Court held that the Dynamic was solely to blame, and, on appeal, we affirmed. Tanker Hygrade No. 24 v. The Dynamic, 2 Cir., 213 F.2d 453. The matter was then referred to a Commissioner who, after a hearing to determine damages, reported that the libellant should recover a total of $12,662.40, $10,852.40 for repairs and $1,800 for gas freeing. The Commissioner also reported that libellant had not proved damages by reason of detention of its vessel, and refused, for want of authority, to pass on libellant's request that it be awarded costs and interest. On libellant's exceptions to the Commissioner's report, the District Court confirmed the Commissioner's allowance for repairs, but raised the allowance for gas freeing, allowed damages for detention, and awarded libellant interest and costs. Claimant appeals, assigning as error the District Court award of demurrage, interest and costs; libellant cross-appeals on the ground that the allowance for repairs and detention is inadequate.
 
 
 2
 Appeal of Conners-Standard Marine Corp.
 
 
 3
 Hygrade No. 24 is the only vessel owned by Tanker Hygrade No. 24, Inc. ('Tanker Hygrade'), a wholly owned subsidiary of Ira S. Bushey & Sons, Inc. ('Bushey'). Another wholly owned Bushey subsidiary, Spentonbush Fuel Transport Service, Inc. ('Spentonbush') acted as operating agent for Tanker Hygrade and for still another Bushey subsidiary, Tank Barge Hygrade, Inc. ('Tank Barge'). At the time of the collision, July 30, 1948, Hygrade No. 24 was carrying almost a full cargo pursuant to an oral contract between Spentonbush and Frontier Fuel Oil Corp. Thereafter, on August 9, 1948, she put in for repairs at the Bushey repair yards and, except for a few days during which she was being gas-freed, remained there until August 27, 1948, when repairs were completed and the barge departed to pick up a cargo. Demurrage is claimed for these nineteen days during which the barge was unable to carry freight.
 
 
 4
 The broad rule governing when demurrage may be allowed is laid down in The Conqueror, 166 U.S. 110, 125, 17 S.Ct. 510, 41 L.Ed. 937, which is claimed as authority by both sides. That rule, adopted from an early English case, The Clarence, 3 W.Rob. 283, states that the owner of a vessel may recover damages for its detention if the detention causes actual loss, the amount of which is proved with reasonable certainty. We agree with the District Court, for the reasons which follow, that these requirements were satisfied by libellant's proof, although we disagree with the amount allowed.
 
 
 5
 The only testimony at the Damage Reference relevant to demurrage was that of a Spentonbush official, Mr. Keegan, vice-president in charge of operations. In substance he stated that the contract with Frontier Fuel Oil Corp. called for Spentonbush to provide a specified number of vessels, having a stated capacity, to make as many trips as the weather and general canal conditions permitted during the 1948 New York State Barge Canal season. Hygrade No. 24 was solidly booked for the 1948 season to freight petroleum products under this contract. According to a statement produced by Keegan which had been prepared at his request by Spentonbush's accounting department ('Exhibit 7'), from April through November, 1948 excluding August, the daily income of the barge from this source after towing and commissions averaged $198.72 a day. This evidence, assuming, for the moment, it was competent, was undoubtedly of high probative value for the purpose of proving the amount of loss. Sturgis v. Clough, 1 Wall. 269, 17 L.Ed. 580. There was also testimony by Keegan, not mentioned in the District Court's opinion, that vessels similar to Hygrade No. 24 were in short supply during the summer of 1948 and that his company chartered them for a per diem rate of $200, exclusive of towing and crew costs, 'if we can get them.' See The Potomac, 105 U.S. 630, 632, 26 L.Ed. 1194.
 
 
 6
 Appellant urges that we should nevertheless reverse the District Court's allowance of demurrage. A first ground for reversal is that since the District Court found appellee's proof 'confusing,' it could not have been so fully satisfied that the Commissioner had erred as to overcome the presumption of correctness accorded his report by Supreme Court Admiralty Rule 43 1/2, 28 U.S.C.A. The second ground urged is that in finding that there had been a loss and in calculating the amount, the District Court relied on Exhibit 7, which was erroneously admitted in evidence over objection.
 
 
 7
 Any confusion as to this aspect of the case is traceable to Mr. Keegan's testimony that he had furnished the vessels required by the contract. This, however, was followed by the statement 'but I could not be able to carry more than what each vessel could carry in the time allowed.' And in the light of this tag end and of his testimony as a whole, it seems obvious to us that Mr. Keegan was saying, perhaps ineptly, only that Hygrade No. 24 was legally excused from making any trips during the time she was undergoing repairs necessitated by the collision. Frontier Fuel Oil Corp., however, had obligated itself to furnish cargoes for as many trips as Hygrade No. 24 could make during the season. Since the contract provided for payment on a barrel basis, the greater the number of barrels carried, i.e., the greater the number of trips, the greater, of course, would be the earnings of the carrier. Here it is clear that, by reason of inability to make any trips during the 19 days in August when it was undergoing repairs, Hygrade No. 24 did suffer actual loss, the amount of which will be considered in connection with her cross-appeal.
 
 
 8
 Nor is Newton Creek Towing Co. v. City of New York, 2 Cir., 23 F.2d 486, relied on by the Commissioner and appellant, to the contrary. That case turned on the fact that the party seeking demurrage kept four or five tugs more than were required by his volume of business and which were always regarded as spare. Here, however, the appellee had no 'spares,' in fact owned only the one barge. Whether Tank Barge could have supplied a vessel is immaterial since we are shown no compelling reason for piercing the corporate veil in this case.
 
 
 9
 Appellant's second ground, that Exhibit 7 should not have been admitted over its objection, is challenged by appellee as not being available in this court because in opposing the admission of the evidence, counsel for appellee said only 'I object to it,' without specifying any basis for the objection.
 
 
 10
 As libellant could readily have produced the man who drew the figures from the original books and records and computed the summary statements included in Exhibit 7, had claimant made explicit the objection he now urges upon us and says he called to the attention of the District Court on motion for reargument, the general objection noted here is clearly insufficient. See Noonan v. Caledonia Gold Mining Co., 121 U.S. 393, 7 S.Ct. 911, 30 L.Ed. 1061; Patrick v. Graham, 132 U.S. 627, 10 S.Ct. 194, 33 L.Ed. 460; District of Columbia v. Woodbury, 136 U.S. 450, 10 S.Ct. 990, 34 L.Ed. 472; and 1 Wigmore, Evidence § 18 and n. 23 (3 ed. 1940) citing these and other cases.
 
 
 11
 It may be assumed that, as asserted by libellant, the District Judges in the Eastern District of New York, have 'advised Commissioners to admit all proffered evidence and let the District Judges make the rulings on admissibility.' We would construe such advice as nothing more than an indication that unnecessary rehearings would be avoided by receiving rather than rejecting evidence of doubtful relevance or materiality, so that such evidence and the objections of counsel thereto could be before the District Court when the matter came up for decision. But the District Judges could not, we think, have intended to relieve counsel of the obligation of nothing specific objections to the receipt of proof in instances where the basis for the objection may, as here, be readily removed by the production of an available witness or the asking of further questions. Matters of this sort should of course be disposed of at the hearing before the Commissioner and, had the specific objection been noted, there is no reason to doubt that it would have been sustained by the Commissioner, and the necessary technical foundation for Exhibit 7 would then have been forthcoming. Moreover, even in the event of an adverse ruling by the Commissioner counsel offering the Exhibit would thus have been given notice of the defect in his offer of proof and an opportunity to remedy the defect. Any other interpretation of the 'advice' seems to us to be quite untenable; and we see no reason to put the parties to further expense in connection with this Exhibit.
 
 
 12
 Appellant next assigns as error the District Court's allowance of interest from July 30, 1948, the date of the collision, on the recovery for cleaning and repairs, and from August 27, 1948, on the recovery for detention, until December 31, 1954. It is contended that interest was not allowable on the recovery for cleaning and repairs as a matter of alw because Tank-Barge Hygrade, Inc., rather than Tanker-Hygrade appears as drawer of the checks given in payment. Appellee's explanation of this fact is that Tank-Barge Hygrade, Inc. received the proceeds of the insurance on Hygrade No. 24 and paid for the repairs in its capacity as disbursing agent for Tanker-Hygrade. But whatever the reason, this does not as a matter of law relieve appellant from liability for interest any more than it would be relieved by proof that the money, if not spent on repairs, would have been kept idle in an office safe. Appellant, as tortfeasor, may not claim the benefits of appellee's credit or corporate affiliations.
 
 
 13
 But appellant is correct, we think, in its contention that the interest on the recovery for repairs and cleaning may not, as a matter of law, begin running before the dates of payment, August 31, 1948, for cleaning, and November 18, 1948, for repairs. Interest on damages from the date of the collision is frequently allowed where the vessel is lost, rather than merely damaged. E.g., Carl Sawyer, Inc., v. Poor, 5 Cir., 180 F.2d 962; The President Madison, 9 Cir., 91 F.2d 835; The Hannah A. Lennen, D.C.Del., 77 F.Supp. 471. But where the vessel is a total loss, its owner may not recover demurrage, and unless allowed interest from the time of the collision there will be some period during which he will have been deprived of the use of his vessel or her money equivalent without compensation. The President Madison, supra. But to grant both demurrage, which theoretically includes the owner's return on his risk capital, and interest on the owner's outlay for repairs before the outlay is made, is to put the owner in a better position than he would have been but for the collision. Hence where the vessel is damaged, rather than lost, and the owner may therefore recover damages for detention, interest on repairs generally commences on the date of disbursement. The Ashwaubemie, 4 Cir., 3 F.2d 782; The Wright, 2 Cir., 109 F.2d 699; The Hannah A. Lennen, supra.
 
 
 14
 Appellant also contends that, even if not erroneous as a matter of law, the allowance of interest-- as well as costs-- must be reversed because they constitute an abuse of discretion. These are matters as to which the District Court has a wide discretion. 3 Benedict, Admiralty § 419 (interest on damages), § 435 (costs) (6 ed. Knauth). Appellee's conduct was not such that we can say the court abused its discretion in this case, and, as that Court notes in its opinion, appellant did not avail itself of the right to tender damages after the interlocutory decree under Rule XXIV of the Eastern District Admiralty Rules.
 
 Cross-Appeal of Tanker Hygrade No. 24
 
 15
 Appellee's cross-appeal raises two questions. The first concerns the amount appellant is entitled to recover for the direct physical injury to the barge resulting from the collision.
 
 
 16
 A survey held after the collision estimated the reasonable cost of repair to be $16,530. This was signed by representatives of the insurer of Hygrade No. 24, the insurer of the Dynamic, and the repairer. A representative of the Dynamic also attended, but did not sign the survey. Subsequently Hygrade No. 24's insurer paid the estimated cost of repair less the first $1,000 for damage. From the proceeds of the check, Tank Barge Hygrade, Inc., disbursing agent for Tanker Hygrade No. 24, Inc., paid $3,150 for gas freeing and remitted $10,852.40 to Bushey, who made the repairs.
 
 
 17
 Undoubtedly, appellee is entitled 2 Cir., 11 F.2d 466; O'Brien Bros. v. the Hygrade No. 24. Pennsylvania R. Co. v. Downer Towing Corporation, 2 Cir., 11F.2d 466; O'Brien Bors. v. The Helen B. Moran, 2 Cir., 160 F.2d 502. Where suit is brought before repairs are made, as it may be, the extent of recoverable damage of necessity is based on an estimate. Theothilatos v. Martin Marine Transp. Co., 4 Cir., 127 F.2d 1016.
 
 
 18
 But where, as here, complete repairs have been made, the amount of recovery may not exceed the actual cost, even though a greater expenditure would have been within range of reasonable cost. See Pennsylvania R. Co. v. Downer Towing Corporation, supra, 11 F.2d at page 467. Whether the actual cost in the case before us was accurately reflected by the survey and distorted by the corporate relationship in the recorded transactions was a question of fact, and since we cannot say the finding of the District Court, made in reliance on the records, was clearly erroneous, we affirm it.
 
 
 19
 The last question concerns demurrage, which the District Court allowed at the rate of $125 a day for nineteen days, but which appellee contends should have been allowed at the rate of $198.72 a day, the average daily earnings of the barge as shown on appellee's Exhibit 7. The District Court apparently took the $198 average of Exhibit 7 as its base figure, and reduced it to $125 'because,' it said, 'of the indefiniteness of the proof as to whether or not the 'Hygrade No. 24' would have worked every day * * *.'
 
 
 20
 This we think was error. Keegan testified that the barge could have worked every day of the period in question had it been available, that it was, in fact, continuously booked for the entire season of 1948, which includes the 19-day period. This evidence is sufficiently definite to warrant a finding that the barge would have worked every day; the witness was not impeached, nor was his testimony contradicted. The appellee is, therefore, entitled to demurrage at its average daily rate, less, however, a deduction for any expenses not incurred because the vessel was not actually operated. Whether there were any savings should be determined on remand, without further reference to a Commissioner.
 
 
 21
 Modified and remanded for further proceedings in accordance with this opinion.