Frank A. LOWERY, Libellant,

v.

THE Tug ELLEN S. BOUCHARD, Motor
Tug Ellen S. Bouchard, Inc., and Bou-
chard Transportation Company, Inc.,
Claimants-Respondents.

Civ. No. 5006.

United States District Court
N. D. New York.

Oct. 10, 1958.

Foley & Martin, New York City, for libellant. Christopher E. Heckman, New York City, of counsel.

Krisel, Beck & Taylor, New York City, for claimants-respondents, Max Taylor, New York City, of counsel.

FOLEY, District Judge.

This seemingly interminable admiralty litigation should be in the last stages. The main issue imposing sole responsibility for the collision on the Bouchard interests was decided by me January 31, 1955 (Lowery v. The Tug Ellen Bouchard, D.C., 128 F.Supp. 16; affirmed opinion below, 2 Cir., 229 F.2d 436). Interlocutory decrees were signed appointing the same Commissioner to ascertain and compute the cargo and vessel damage. The Report of the Commissioner as to the cargo damage was substantially modified by me on June 4, 1957, Cargill, Inc., The Frank A. Lowery, D.C., 159 F.Supp. 133. Appeal was again taken by the Bouchard interests and affirmance was again made on the opinion below. 2 Cir., 251 F.2d 845; certiorari denied The Tug Ellen S. Bouchard v. Cargill, Inc., 356 U.S. 951, 78 S.Ct. 917, 2 L.Ed.2d 845. The Commissioner's Report on the separate phase of vessel or barge loss and damage and other issues relevant thereto has now been filed. The libellant files seven exceptions and the claimants-respondents file twenty-eight exceptions. The substantial points created by these exceptions do not necessitate discussion of each one in detail but shall be dis-

cussed generally as was done by the proctors in their oral argument and briefing.

The first point is the finding by the Commissioner that the value of the two barges that went down as a result of the collision, the Mae Lowery and the Marion O'Neill, was $10,000 for each. The exceptions of the libellant urge that the value of the Mae Lowery should have been fixed at $17,304.50 and the value of the Marion O'Neill $20,015.50. The claimants-respondents by their exceptions urge that the value of the Mae Lowery should not exceed the sum of $3,000, and the Marion O'Neill not exceed $3,500.

■ As to the ascertainment of value of these lost barges, the Commissioner had a very perplexing and substantial problem. The barges were wooden, old in the trade but still useful and money earners at the time of the collision, and the Commissioner was impressed that they "were in excellent condition and with proper maintenance had an unlimited life expectancy." Page 3, Commissioner's Report. However, because of their unique character and age the dilemma was present to fix fair and reasonable value without the aid of any precise legal formula. These facts, particularly the ones that reproduction of their type would never be made and a true market of sufficient contemporaneous sales did not exist, led the Commissioner to adopt an overall appraisal of combined factors before him. This approach to the problem he makes clear with the statement: "The real value of the lost vessels must be sought amidst all the relevant facts with prudence and reasonableness as the only guide." Page 9, Commissioner's Report.

Under the circumstances, in my judgment, this approach is legally sound. Standard Oil Company v. Southern Pacific Co., 268 U.S. 146, 156, 45 S.Ct. 465, 69 L.Ed. 890; Carl Sawyer, Inc. v. Poor, 5 Cir., 180 F.2d 962; O'Brien Bros, Inc., v. The Helen B. Moran, 2 Cir., 160 F.2d 502, 505; Bisso v. Inland Waterways Corporation, D.C., 139 F.Supp. 387.

These authorities justify the determination of the Commissioner that in situations of this kind involving value there must be flexibility to form a reasonable judgment based upon an appraisal and evaluation of all relevant facts. United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U.S. 396, 402, 70 S.Ct. 217, 94 L.Ed. 195, recognizes again that the determination of value cannot be reduced to inexorable rules. The Commissioner did not base his conclusion upon one factor but weighed the impact of all the facts in his search for fairness and reasonableness. It is true that he gave great weight to the opinion value estimated by the Lowery witnesses but such testimony is not to be treated differently from other testimony, and it is the chief function of the Commissioner to evaluate it as to its credibility and weight. The Commissioner mainly avoided the reproduction less depreciation principle as urged by the libellant in its proof, but did use this type testimony of Mr. Terry, witness for Bouchard, to some extent to support his final conclusion as to value. Page 11, Commissioner's Report. I am also impressed by the moneys expended by Lowery on the two barges a short time before the collision and the gross revenue of the fleet of $186,815. Page 10, Commissioner's Report. The claimants-respondents argue strongly that the evidence that the libellant was willing to sell his tug and five barges for $35,000 should be conclusive in fixing the value of the barges in the lesser amounts they seek. This is only another factor for the Commissioner to weigh with all the circumstances surrounding such transaction. Whether the price was fixed by the seller or buyer has some doubt in the record, but it is settled that an offer to buy is not evidence of value. United States v. Meadow Brook Club, 2 Cir., 259 F.2d 41; Sharp v. United States, 191 U.S. 341, 348, 24 S.Ct. 114, 48 L.Ed. 211. In my judgment, this type evidence is inherently dangerous, as the Sharp case points out, and to me there is little difference whether it comes from

the seller or the buyer. At least in no sense can such previous incomplete business transaction have the force of estoppel in his search for fair market value. I am content that the Commissioner, in fixing the value of the lost barges, made a reasonable, balanced judgment between two extremes that was supported by the facts and in accord with the law.

■ I need spend little time on the discussion of the amounts awarded by the Commissioner for the repairs to the other four surviving barges. In this customary area of dispute, the Commissioner adopted the estimates made early in the struggle by the surveyor for the claimants-respondents underwriters. I cannot imagine a fairer base for decision. The low amounts sought by the Bouchard interests in their exceptions are even overcome substantially by the estimates of the three surveyors it called on its own behalf. Page 13, Commissioner's Report. Again, the Commissioner found a middle ground in the factual dispute between the figures of libellant and claimants-respondents, and that is usually a good judgment, and such awards are allowed to stand. I did not have in mind at the main trial the issue of damage at all. However, I am certain that the W. W. Clute did not have bow plank damage before the collision because it was established at the trial before me that the fleet had been inspected by a competent survey company which I am sure would not have allowed that barge to carry the valuable cargo of grain it did with the bow plank damage found by the surveyors after the collision. I find such damage was caused by the collision. The fact that temporary or partial repairs only were made does not preclude the Commissioner from fixing the reasonable cost of permanent repairs to restore to good condition. Pennsylvania R. Co. v. Downer Towing Corp., 2 Cir., 11 F.2d 466, 467; Bleakley Transportation Co., Inc., v. Colonial Sand & Stone Co., Inc., 2 Cir., 245 F.2d 576, 578. The libellant in its memorandum filed with the Commissioner did not ask for interest on these amounts awarded for repairs and none was allowed by him. The libellant by its exceptions now asks for such interest, but it is clear that although the matter is discretionary, when repairs are not actually made the Court is justified in exercising discretion against interest, and I so do. In re Hibbard, 2 Cir., 27 F.2d 686, 687; O'Donnell Transportation Co., Inc., v. City of New York, 2 Cir., 215 F.2d 92; The Hygrade No. 24, Inc., v. The Dynamic, 2 Cir., 233 F.2d 444, 448.

Also, the refusal of the Commissioner to award Lowery damage or detention damages involves a pure question and dispute of fact clearly for the determination of the fact finder. The inference and conclusion that Lowery showed no actual loss in a reasonably certain amount is supported by the record. The Conqueror, 166 U.S. 110, 125, 17 S.Ct. 510, 41 L.Ed. 937; The Hygrade No. 24, Inc., v. The Dynamic, supra, 233 F.2d 444, 445; Moore-McCormack Lines v. The Esso Camden, 2 Cir., 244 F.2d 198, 201.

The question of delay as it pertains to interest to be added to the amounts awarded by the Commissioner is pressed by the claimants-respondents, Bouchard. I dislike to say this, but I am not too certain that they maintained an attitude throughout consonant with speed and dispatch. In checking my file, I find a memorandum-decision dated June 14, 1954, setting the suit down for trial on September 13, 1954. This was done at the request of the Bouchard interests when Lowery was striving hard for immediate trial. The claimants-respondents tried to stay the hearings pending the first appeal and it seems a fair inference that even though such stay was denied by the Court of Appeals they had no serious objection to the time taken by Lowery to finally bring the matter here before the Commissioner. The fact that these same claimants-respondents were involved before the Commissioner in the cargo value dispute may have been good reason for the delay of hearings in this matter. The only serious contention that does not involve to some extent at least passive agreement by the claimants-respond-

494

ents to delay is the time taken by the Commissioner to file his report after the matter had been submitted to him for decision. There is also some justification for this delay, or at least there are no circumstances present to penalize the libellant for something for which he was not in the slightest way responsible. As I know now, the matters that were presented to the Commissioner were intricate and complex. The record was a long one with many exhibits and entailed several trips to New York City to reduce expenses for the litigants. Appeals were taken from my decision modifying greatly the position taken by the Commissioner in the Cargill cargo damage determination. Reversal or clarification on such appeals carried to the United States Supreme Court by the claimants-respondents might have affected some part of this determination. This is not the extravagant or extreme one where everyone sat around for a long time doing nothing. The Russell No. 3, 2 Cir., 82 F. 2d 260, 261; The Hellenic Lines v. The Exmouth, 2 Cir., 253 F.2d 473, 479, Clark, Ch. J., dissenting.

The Commissioner requested an allowance of $4,500 to which the claimants-respondents except. As the Courts have stated many times, the setting of allowances and fees is always a delicate problem, but I think the affidavit filed by the Commissioner at my request supports the amount of the allowance he seeks. The questions were complex, the record and hearings were long, and he was considerate enough to travel to New York City at his own expense. A good guide I have is that in the cargo damage hearing, not nearly as complex or lengthy as this one, the Commissioner requested and was allowed $3,000 without any objection by the Bouchard interests.

All the exceptions on both sides are denied and dismissed. The determination of the Commissioner is confirmed in its entirety. A final decree to such effect shall be submitted if agreed upon, otherwise settled on three days' notice.